Commonwealth *v.* Lipscomb, Appellant.

Argued January 14, 1974. Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Louis Lipschitz,* for appellant.

*Benjamin H. Levintow,* Assistant District Attorney, with him *David Richman,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, March 25, 1974:

This is a direct appeal from the judgments of sentence imposed on David Lipscomb following his conviction by a jury of murder in the first degree and of conspiracy to commit robbery and murder.[1]

The prosecution stemmed from the fatal stabbing assault on Edward Sweeney, allegedly committed by Lipscomb and six other young men on a public street in Philadelphia. The assistant district attorney's argument to the jury violated the rules of proper professional conduct and was of such a prejudicial character as to deny Lipscomb his constitutional right to a fair trial. We will, therefore, order a new trial.

In part, the representative of the Commonwealth argued to the jury as follows:

"You know, my best witness isn't here today. But if he could come back, if Mr. Sweeney could come back and sit in this chair and face you, the jurors, I believe he would say, 'I didn't want to die. I was only 59 years of age. I think I had a number of years ahead of me, I didn't want to die. I was just walking along the

---

[1] The jury fixed life imprisonment as the punishment to be imposed on the murder conviction, and the sentence was in accordance with this directive. The court imposed a concurrent two-year prison sentence on the conspiracy conviction.

street, a friend had been kind enough to give me a little bag of groceries to help me out because I was unemployed at the time, and I was on my way home, walking the route I have walked many, many times from my friend's house.

" 'I didn't want to die. I didn't know this would be my last walk. I didn't know that a bunch of hoodlums and animals would pounce upon me and tear me apart and would cause my blood to stream out on the sidewalk and beside a tree, on the ice and the water. I tried to save myself. I got up, I tried to put my little belongings in my bag, but I couldn't get them. But, I walked towards home, the only route I knew for years, and I got to my house and I gave out; I gave out, I ran out of gas, and so I just lay there with my back to the steps and my head resting against it. My friend had given me a couple of Reader's Digests which I dropped on the steps, filled with blood. I didn't want to die. Why did I have to die? . . .'

. . . .

"And I think Mr. Sweeney would say, 'The only way you couldn't find this defendant guilty of murder of the first degree is for me to come alive again before your very eyes and walk out of that door to my home.' " Defense counsel immediately made a motion for a mistrial which the trial judge refused to grant.[2]

As recently as January 24, 1974, this Court expressed its criticism of improper and prejudicial comments by district attorneys. See *Commonwealth v. Toth,* 455 Pa. 154, 314 A. 2d 275 (1974). See also *Commonwealth v. Brooks,* 454 Pa. 75, 309 A. 2d 732 (1973) ; *Commonwealth v. Revty,* 448 Pa. 512, 295 A. 2d 300 (1972) ; *Commonwealth v. Potter,* 445 Pa. 284, 285 A. 2d 492 (1971) ; and *Commonwealth v. Clark,*

---

[2] The trial judge did not instruct the jury to disregard this argument of the assistant district attorney, nor did he refer to it in his charge.

322 Pa. 321, 185 A. 764 (1936). The instant case falls directly in line with these decisions. The foregoing argument exceeded the bounds of propriety and constituted an appeal to the passions and prejudices of the jury. Moreover, in testifying as if his "best witness" Mr. Sweeney, was in the courtroom, that which followed amounted to the giving of testimony by an unsworn witness. See *Commonwealth v. Clark,* supra. In referring to Lipscomb and his alleged associates by the epithets of "hoodlums" and "animals", the assistant district attorney interjected his personal belief in the guilt of the accused. Such "expressions of personal belief . . . have no legitimate place in a district attorney's argument." *Commonwealth v. Capalla,* 322 Pa. 200, 206, 185 A. 203, 206 (1936). As stated in *Capalla*: "It is no part of a district attorney's duty, and it is not his right, to stigmatize a defendant. He has a right to *argue* that the *evidence* proves the defendant guilty as charged in the indictment but for the *district attorney himself to characterize* the defendant as 'a cold-blooded killer' is something quite different. No man on trial for murder can be officially characterized as a murderer or as 'a cold-blooded killer,' until he is adjudged guilty of murder or pleads guilty to that charge." [Emphasis supplied.] *Id.* at 204, 185 A. at 205. See also *Commonwealth v. Toth,* supra; *Commonwealth v. Williams,* 309 Pa. 529, 164 A. 532 (1932); *Commonwealth v. Shoemaker,* 240 Pa. 255, 87 A. 684 (1913); *Commonwealth v. Bubnis,* 197 Pa. 542, 47 A. 748 (1901). Cf. *Hall v. United States,* 419 F. 2d 582, 587 (5th Cir. 1969). Further, in conjunction with the characterization of "hoodlum" and "animal", the prosecution's comment that, "I think Mr. Sweeney would say, 'The only way you couldn't find this defendant guilty of murder of the first degree is for me to come alive again before your very eyes' " amounts to a statement by the prosecutor that in effect he is personally

convinced that the appellant is guilty, and his innocence is as unlikely as the resurrection of the deceased. Such personal assertions by a district attorney on the guilt of the accused is beyond the scope of fair play,[3] and is emphatically condemned. See *Commonwealth v. Capalla*, supra. See also *U.S. v. Schartner*, 426 F. 2d 470 (3d Cir. 1970). In *Capalla*, this Court discussed the district attorney's characterization of the accused as "a cold-blooded killer." We stated the statement "was equivalent to an expression of belief on the part of the district attorney that the defendant was guilty of murder in the first degree. There are no facts in the record warranting any such belief on the part of anyone, and even if there were, the first officials who had the right to give expression to that belief were the jurors after the case was committed to their keeping." *Id.* at 205-206, 185 A. at 206.

Another portion of the assistant district attorney's argument was also improper and unwarranted.

As part of his defense, Lipscomb called four witnesses, including a former school teacher, to testify to his previous good reputation. The Commonwealth of-

---

[3] The American Bar Association project on Standards for Criminal Justice also condemns such conduct:

"5.8 Argument to the jury

"(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

"(b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence of the guilt of the defendant . . . .

"5.9 Facts outside the record

"It is unprofessional conduct for the prosecutor intentionally to refer to or argue on the basis of facts outside the record whether at trial or on appeal . . . ." A.B.A. Standards, The Prosecution and Defense Functions, at 126-29.

fered no evidence to refute this testimony; however, during his summation the assistant district attorney argued thusly:

"My only question, the only question, I want to ask you is, Where is this minister? Where is the defendant's minister or his priest? Where are the neighbors in the area in which he has lived before Evans School or after Evans School who could come in and say, 'I have known this boy, I watched him grow up for 16 or 17 years, 8 years, whatever it is, and I know his reputation is good in the community.' That is the way you test reputation evidence. You ask them how long they have known the defendant. Do you know other people in the community who know the defendant? Among those people in the community whom you know, who knows the defendant, what is his reputation for being a peaceful, law-abiding citizen or whatever it is?

"Well if you've never asked the people in the community what his reputation is, you can't know what his reputation in the community is. It's not what you think of him, it's what other people in the community think of him. And there's no one here brought in from his community at any time who said that this defendant had a good reputation in the community in which he lived. No one except his mother, his father and his girl friend."

There is no burden on a criminal defendant to establish his previous good reputation. If he fails to introduce testimony in this regard, no adverse influence may be drawn therefrom, nor may such an adverse inference be drawn merely because only a limited number of witnesses were called to testify as to the good reputation of the accused. And, by the same token, no such adverse inference may be drawn merely because the accused failed to call some particular individual as a character witness. The assistant district attorney asked the jury to do just that. His argument was much more

than just an attack on the quality of the character testimony offered by Lipscomb—as the Commonwealth contends.

Judgments reversed, and a new trial is ordered.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.