333 A.2d 786
**COMMONWEALTH of Pennsylvania**
v.
**Jimmie Lee LARK, Appellant (two cases).**

Supreme Court of Pennsylvania.

Submitted Nov. 11, 1974.

Decided March 18, 1975.

400

Ronald J. Brockington, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Jr., Dist. Atty., Richard A. Sprague, First Asst. Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Benjamin H. Levintow, Asst. Dist. Atty., Mark Sendrow, Asst. Dist. Atty., Asst. Chief, Appeal Div., Abraham J. Gafni, Deputy Dist. Atty. for Law, Philadelphia for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

JONES, Chief Justice.

Appellant, Jimmie Lee Lark, was convicted of murder in the second degree and aggravated robbery in the robbery-murder of Irving Rotfarb on September 3, 1970. Timely motions for a new trial and in arrest of judgment were denied and appellant was sentenced. This appeal followed.[1]

The evidence adduced at trial disclosed that on the morning of September 3, 1970, the appellant, seventeen years old, and his adult brother, Nathaniel, observed the victim's automobile pull up to the residence of a neighbor, Gary Taylor, also known as Gary Bloch. Appellant asked Gary Taylor why the victim was at the residence and was told that the man cashed checks for Gary's mother. Appellant's brother, Nathaniel, said that they were going to "get" the victim. Appellant agreed to par-

---

1. The appeal of the judgment of sentence for the robbery conviction was filed in the Superior Court and subsequently transferred to this Court pursuant to the Act of July 31, 1970, P.L. 673, § 503(c), 17 P.S. § 211.503(c).

ticipate. He ran to the corner to act as a lookout for his brother. Nathaniel Lark approached the victim, shot and robbed him. The two boys ran home; on the way, appellant told a neighbor, Joseph Beard, that appellant and his brother robbed a man and that his brother had shot him. Inside the house Nathaniel gave the appellant thirty-five dollars out of an undetermined amount of money taken from the victim.

Appellant assigns as error several matters, including the contention that the remarks of the prosecutor during his summation to the jury were so prejudicial as to require a new trial.[2] We agree.

The prosecutor in his closing made the following remarks to the jury after each of which defense counsel interposed his objection and was overruled.

" . . . Remember we didn't come in here and wave any bloody shirts in front of your faces. We didn't bring in grieving widows or grandchildren. I mean, there was a man that died here. He had a family. He had people that loved him. He was 57 and working, maybe he was going to retire in a few years. I think there are other voices in this room. He may have said to you, I wanted to go on living. All right, I was 57, I had a family, grandchildren, but I wanted to live. I wanted to live with my family.

\*     \*     \*     \*     \*     \*     \*     \*

"And that's how it all happens. That's right, he wasn't taken to the University of Pennsylvania, to the law library, and sat down there for tea. He wasn't taken to the home of the Bishop of Boston for a conference. It doesn't work that way, because the citizens have a right to be protected and they have a right to

2. Since a new trial is mandated, we need not consider appellant's contentions that the trial court abused its discretion in permitting, over objection, certain leading questions by the Commonwealth of its own witnesses or that certain other remarks and conduct of the prosecutor were prejudicial.

have these homicides that are occurring more and more solved.

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

"Because it's eleven-thirty in the morning . . . can't you picture it, eleven-thirty in the morning on that street, there's all sorts of people there. Irving Rotfarb got killed. Could have been anybody. Could have been the next-door neighbors, anyone; people on the other side, next door. You never know what's going to happen in a felony murder and that's why the law makes good sense when it says if you believe it was a felony murder, or the defendant was the lookout, or they split the money afterwards, or he was part of the planning—and here's someone that fits into all three. And I think in terms of evilness Jimmie Lark is more evil than Nate Lark because when you blend it all together, I think he's actually the planner behind this, so that's why I say he's clever. That's for you to decide.

I'll say for you there's one way that you could find this defendant not guilty, there's only one way, and that's if Irving Rotfarb walked through those courtroom doors, then you could find the defendant not guilty . . . ."

On numerous occasions this Court has made explicitly clear its criticism of improper and prejudicial remarks on the part of a prosecutor. *See Commonwealth v. Harvell,* —— Pa. ——, 327 A.2d 27 (1974); *Commonwealth v. Russell,* 456 Pa. 559, 322 A.2d 127 (1974); *Commonwealth v. Lipscomb,* 455 Pa. 525, 317 A.2d 205 (1974); *Commonwealth v. Brooks,* 454 Pa. 75, 309 A.2d 732 (1973); *Commonwealth v. Revty,* 448 Pa. 512, 295 A.2d 300 (1972); *Commonwealth v. Potter,* 445 Pa. 284, 285 A.2d 492 (1971); *Commonwealth v. Clark,* 322 Pa. 321, 185 A. 764 (1936). We believe that the prosecutor's re-

marks in this case clearly exceeded the limits set forth in the cases above.[3]

References by the prosecutor such as those to bloody shirts, homicides that are occurring more and more and that it "could have been anybody" were no more than ill-concealed attempts to divert the inquiry from the pursuit of truth and an invitation to give vent to visceral and unreasoned responses. *See Commonwealth v. Harvell,* — Pa. at ——, 327 A.2d 27. We have said in regard to similar comment as to what the victim might say if he were alive,[4] "in testifying as if . . . Mr. Sweeney, was in the courtroom, that which followed amounted to the giving of testimony by an unsworn witness." *Commonwealth v. Lipscomb,* 455 Pa. at 528, 317 A.2d at 207. *See also Commonwealth v. Clark, supra.* Emphatically condemned in *Lipscomb* is yet another comment [5] similar to that of the prosecutor when he argued here, "there's one way that you could find this defendant not guilty, there's only one way, and that's if Irving Rotfarb walked through those courtroom doors, then you could find the defendant not guilty." As we said in *Lipscomb,* 455 Pa. at 528–529, 317 A.2d at 207, this amounted to a statement by the prosecutor that he was personally convinced that the appellant was guilty, and his innocence was as unlikely as the deceased's resurrection. We held such *personal assertions* by the prosecutor on the guilt of the

3. *See* American Bar Associations Standards Relating to the Prosecution Function §§ 5.8 and 5.9, recently set forth in *Harvell, supra.*

4. "You know, my best witness isn't here today. But if he could come back, if Mr. Sweeney could come back and sit in this chair and face you, the jury, I believe he would say, 'I didn't want to die. I was only 59 years of age. I think I had a number of years ahead of me, I didn't want to die. . . .'" *Commonwealth v. Lipscomb,* 455 Pa. at 526, 317 A.2d at 206.

5. "And I think Mr. Sweeney would say, 'The only way you couldn't find this defendant guilty of murder of the first degree is for me to come alive again before your very eyes and walk out of that door to my home.'"
*Commonwealth v. Lipscomb,* 455 Pa. at 527, 317 A.2d at 206.

accused were beyond the scope of fair play and were reversible error.

Yet an even stronger assertion was made by the prosecutor in this case when he expressed his *personal belief*, after numerous references to the appellant's clever and cunning nature, that he thought Jimmie Lark to be clever, more evil than his brother and the actual planner of the crime committed by the two brothers. Not only did the prosecutor impermissibly express his *personal* conviction that appellant was guilty but he also characterized appellant as evil, clever and calculating. As was said in *Commonwealth v. Capalla*, 322 Pa. 200, 204, 185 A. 203 (1936), it is no part of the district attorney's duty nor right to stigmatize the defendant. The *Capalla* Court went on to say that the characterization of the defendant there as a cold-blooded killer was supported by no facts in the record which could warrant such a belief by anyone, and even if they were, the jury must be the first permitted to express such a belief. Here appellant, a juvenile who had never been in trouble before, agreed to run to the corner to be a lookout for a twenty-year old brother who had previously procured the murder weapon without any collaboration on the part of appellant, did the actual shooting and robbing of the victim and paid appellant afterwards for assisting him. The Commonwealth's strongest evidence of appellant's collaboration in the plan was appellant's own admission that the two brothers decided to rob the victim. For the district attorney to unfairly characterize appellant as he did, totally unsupported by any evidence in the record, was to express his own personal beliefs and to invite the jury to rely upon the district attorney's knowledge, general experience and wisdom. *Cf., United States v. Schartner*, 426 F.2d 470 (3d Cir. 1970). These statements exceeded the bounds of fair play and decency and violated the appellant's right to a fair and impartial trial.

■ Appellant also seeks to have his confession suppressed. The only issue preserved for our consideration is the voluntariness of that confession.[6] The trial court, supported by the record, found that appellant, seventeen years old and in the eleventh grade, was articulate, knowledgeable, of at least average intelligence, and capable of comprehending *Miranda* warnings. The trial court found that defendant was given his warnings, allowed to eat and to rest, and was in custody for approximately six hours prior to giving his first inculpatory statement. The court further found that appellant was not mistreated and that appellant's mother was aware that appellant was being taken in by the police for questioning but declined to accompany him. After examining the totality of the circumstances, the trial court correctly determined that the confession was voluntary. *See Commonwealth v. Jones*, 459 Pa. 286, 328 A.2d 828 (1974); *Commonwealth v. Fogan*, 449 Pa. 552, 558, 296 A.2d 755, 758 (1972); *Commonwealth v. Moses*, 446 Pa. 350, 287 A.2d 131 (1971).

Judgment reversed and new trial ordered.

ROBERTS and MANDERINO, JJ., concur in the result.

6. Appellant also raises on appeal the arguments that appellant was detained for an unreasonable length of time before being presented to a juvenile court judge and that Rule 318 of the Rules of Criminal Procedure, 19 P.S. Appendix, relating to the assignment of counsel, deprived appellant of equal protection of the law. Since neither of these arguments was raised until post-trial motions were filed, they were not timely presented for our consideration on this appeal.