364 A.2d 287

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Ernest ADKINS, Appellant.**

Supreme Court of Pennsylvania.

Argued March 29, 1976.

Decided Oct. 8, 1976.

Mead S. Spurio, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Deborah E. Glass, Asst. Dist. Atty., Carolyn E. Temin, Philadelphia, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

On March 13, 1974, Ernest Adkins was convicted by a jury of murder of the first degree [1] following the

---

1. Adkins was indicted and tried for murder and conspiracy. However, before the case was submitted to the jury, the court sustained a motion for a directed verdict of not guilty on the

fatal shooting of Gregory Williams.. Post-verdict motions were denied and a sentence of life imprisonment was imposed. Adkins appealed from the judgment of sentence asserting three assignments of error.[2] Since we have determined a new trial is required because prejudicial remarks made in closing argument by the attorney for the Commonwealth were not based on facts in evidence, we need not discuss Adkins' other assignments of error.[3]

During his closing argument, the assistant district attorney stated:

"The one key to this case is this: Daniels testified, as was his testimony in court, and then I went over the testimony he gave to the police. He told the police something that Paul Walker didn't tell them. My question to Daniels was do you remember being asked the question, 'What was this all about?' And the answer was I don't know, except I think it was because I think the deceased was selling drugs in Fat Butch's [Adkins'] territory. That is what happened.

"In this city there are different areas where narcotics are sold or where you can go and buy heroin. A lot of times, as in the case here, the deceased used narcotics. When you use narcotics, you buy maybe five or ten bags extra because then you go out in the street and if you sell a couple of extra bags, that pays for what you use. That is probably what happened here, except that Gregory Williams made one mistake, he

conspiracy charge. The court did not inform the jury of the ruling, although requested to do so by Adkins.

2. Although Adkins does not assert the evidence was insufficient to support the verdict, we have made an independent review of the record and have determined sufficient evidence exists to support the verdict.

3. Adkins' other assertions are: (1) the Commonwealth failed to disclose the existence of exculpatory evidence; and (2) the trial judge committed prejudicial error in his instructions to the jury.

went into the wrong territory, this defendant's territory and that is what cost him his life. It probably wasn't the first time he did it. But he went into this defendant's territory and that is why he was executed on August 29, because he was selling drugs in the wrong territory."

This argument stressed Adkins killed Williams because Williams was selling narcotic drugs in Adkins' "territory."

After the assistant district attorney concluded his argument, the trial court indicated it would charge the jury the next day and then dismissed the jurors. Immediately thereafter, at an in-chambers conference, requested by defense counsel, an objection was entered to the above quoted argument on the ground no factual basis was present in the evidence to support it. The objection was overruled.

The Commonwealth now concedes the only basis in the evidence for the motive argument is a statement given by a defense witness, Cleveland Daniels, to police on the day of the killing. That statement was introduced into evidence in the following manner.

During direct examination by defense counsel, Daniels provided an account of the killing which was inconsistent with the account he had provided police. During cross-examination, the assistant district attorney produced a signed, typewritten statement and requested it be marked for identification. He asked Daniels if he had given a statement to the police and Daniels responded affirmatively. He then asked if the particular exhibit was that statement. Daniels admitted his signature appeared at the bottom of each page of the exhibit. The assistant district attorney then read to Daniels each question and answer individually, as recorded in the statement, and asked if Daniels had made the answers the statement in-

dicated. Daniels admitted making each answer [4] until he was confronted with the following and then this ensued:

"Q. [Do you remember this question?] 'Question [by the police]: Do you know what the trouble was over?'

"A. No. I don't.

"Q. Do you remember the answer? 'No, I don't, but I think it was because [Williams] was taking over [Adkins'] territory selling drugs.'

"A. No, I don't.

"Q. You don't remember that question and answer?

"A. No, I don't."

The assistant district attorney then diverted to other matters, but subsequently returned to questioning about the statement:

"Q. Now, in the statement where the question was, 'Do you know what the trouble was over?' And you said 'No, I don't, but I think it was because [Williams] was taking over [Adkins'] territory selling drugs.' You didn't say that?

"A. I don't know what I said. I might have said it.

"Q. Wasn't [Williams] trying to take over [Adkins'] territory in the projects?

"A. I don't know."

At the conclusion of the testimony, the assistant district attorney moved to admit into evidence all exhibits previously marked for identification, including the recorded statement given by Daniels to the police.

4. Subsequently, Daniels testified he made the statement to police because he had been threatened by Paul Walker, a key witness for the Commonwealth in the instant trial. Further, Daniels said he had informed the district attorney's office prior to trial that his prior statement was coerced and that the killing occurred as he testified at trial, but that an assistant district attorney told him he would be rearrested on an unrelated charge if he changed the statement he had provided to police.

Defense counsel did not request that the contents of the prior inconsistent statement be admitted for the limited purpose of impeachment either while it was being read to Daniels or when it was admitted with the other exhibits.[5] Further, defense counsel did not request that the jury be instructed the statement was to be considered only for the purpose of impeachment.

Despite several rulings by this Court that a prior inconsistent statement of a witness (as distinguished from a party to the litigation) is admissible in evidence for the purpose of impeaching the credibility of the witness, but is not substantive evidence of the truth of the matter stated,[6] the Commonwealth maintains that Daniels' prior inconsistent statement instantly should be considered as substantive evidence,[7] and when so considered, provides an adequate basis for the motive argument advanced by the assistant district attorney. But, even assuming the statement was "substantive evidence," a close examination of the statement clearly demonstrates it does not support the challenged argument.

In his trial testimony Daniels stated unequivocally he did not know why the killing occurred. In his statement to the police when asked if he knew why the trouble started, Daniels said: *"No, I don't, but I think* it was because [Williams] was taking over [Adkins'] territory selling drugs." [Emphasis added.] This was not a

5. Defense counsel did object when the assistant district attorney began to read each question and answer as recorded in the statement to Daniels; but the objection was clearly aimed at the form of the questions and did not constitute a request that the statement be admitted for a limited purpose only.

6. For example, see *Bizich v. Sears, Roebuck & Co.,* 391 Pa. 640, 139 A.2d 663 (1958) and *Commonwealth v. DiPasquale,* 424 Pa. 500, 230 A.2d 449 (1967).

7. There is substantial authority for this position, particularly when there is a failure by the opposite party to properly object or request that the statement be admitted for a limited purpose only. See McCormick, Evidence §§ 59 and 251 (2d ed. 1972), and 3A Wigmore, Evidence § 1018 (Chadbourn Rev.1970).

statement of fact. It constituted mere speculation on Daniels' part, and hence, was totally inadequate to warrant the assistant district attorney's statement to the jury that Williams was killed because he went into Adkins' territory selling drugs.[8]

As we stated in *Commonwealth v. Revty*, 448 Pa. 512, 516, 295 A.2d 300, 302 (1972), " . . . the District Attorney must limit his statements to the facts in evidence and legitimate inferences therefrom." And see A. B.A. Standards for Criminal Justice Relating to the Prosecution Function, § 5.8. Moreover, as we clearly indicated in *Revty*, supra at 517, 295 A.2d at 302, conclusions advanced in argument to the jury must be reasonably drawn from the evidence. Since the only evidence to support the argument instantly challenged was the expression of a speculative belief by Daniels, it can hardly be said that the argument was "reasonably drawn from the evidence." Cf. *Commonwealth v. Fairbanks*, 453 Pa. 90, 306 A.2d 866 (1973).

▪ The Commonwealth argues the issue has been waived because the trial court instructed the jury that the prior inconsistent statement could be considered as substantive evidence and defense counsel did not object to this instruction. The failure to object to the charge does not affect the right to challenge the propriety of the remarks made by the assistant district attorney in closing argument.

▪ The Commonwealth argues the objection to the closing argument was untimely because it was not made during the closing argument. As noted before, immediately after the closing argument, the court dismissed the jury for the day and defense counsel then entered his objection. Under the circumstances and particularly

8. It is also important to note that aside from Daniels' speculative assertion to the police, there is absolutely nothing in the record to establish Adkins was involved in selling narcotics or that he had a "territory" for that purpose.

since the argument was recorded and its content undisputed, the trial court had adequate warning of the nature of the objection to the closing argument before its charge to the jury and was provided with adequate opportunity to correct the effect of the assistant district attorney's improper argument. Hence, we are not persuaded the objection was untimely.

It is true that in *Commonwealth v. Cisneros*, 381 Pa. 447, 450, 113 A.2d 293, 296 (1955), we said: "The . . . objection was not timely as it was made at the conclusion of the assistant district attorney's address . . . ." But, the correctness of the applicability of the rule must be assessed in light of the attending circumstances.

The foregoing rule was forged as a matter of necessity to ensure an adequate and correct record on appeal. Where the argument is not recorded, there is a need to require an objection during the argument so that the remarks may be placed in the record at or about the time they are made and thereby ensure accuracy. Otherwise, the recollection of both counsel and the court at the conclusion of the argument may differ and thereby result in unnecessary factual disputes.

Instantly, the entire argument was recorded and its content was available to both counsel and the court at the conclusion of the argument. Under such circumstances, no dispute as to what was in fact said during the argument can arise and therefore no necessity exists to require objection prior to the conclusion of the argument. Thus, the rule requiring objection during the argument is inapplicable here.

Finally, the Commonwealth argues the error was harmless beyond a reasonable doubt. While the Commonwealth is not required to establish the motive for a homicide, proof of motive is always relevant and undoubtedly has an impact on the jury. Furthermore, the

closing argument here not only emphasized a motive which had no factual basis in the record, but the nature of the alleged motive also indicated Adkins was involved in other criminal activity. Under such circumstances, we cannot consider the argument harmless. See *Commonwealth v. Fairbanks,* supra; *Commonwealth v. Revty,* supra; *Commonwealth v. DiPasquale,* supra.

Accordingly, the judgment of sentence is reversed and a new trial is ordered.

JONES, C. J., did not participate in the consideration or decision of this case.