368 A.2d 253

**COMMONWEALTH of Pennsylvania**

v.

**Merle Ronald GILMAN, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 25, 1975.

Decided Jan. 28, 1977.

Daniel J. Ackerman, Richard H. Galloway, Greensburg, for appellant.

Albert M. Nichols, Dist. Atty., John J. Driscoll, Greensburg, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant Merle Ronald Gilman was convicted of first degree murder and sentenced to life imprisonment after a jury trial. At trial appellant objected to several remarks made by the prosecutor during closing argument and moved for a mistrial. Appellant preserved these objections in his post-trial motions. The prosecutor's remarks included an attempt to disparage appellant's trial strategy, a personal attack on appellant himself, and an appeal to the emotions of the jury. Appellant contends that he is entitled to a new trial.[1] We agree. The prosecutor's remarks were improper and denied appellant a fair trial. We reverse the judgment of sentence and remand for a new trial.[2]

1. This appeal is brought pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1976).

2. We do not pass upon appellants other assignments of error: that the trial court erred in (1) admitting into evidence, over appellant's objection, a photograph of decedent's nude body; (2) ruling that appellant's entire criminal record would be admissible for impeachment purposes if appellant testified; (3) denying appellant's motion for a mistrial based on the prosecutor's hypothetical question to the defense psychologist which implied that

## I

The Commonwealth presented evidence at trial to establish that the decedent, Lee Ann Grimm, and a companion, Sandra Johnson, were hitchhiking to Cramer, Pennsylvania, during the late evening hours of July 5 and the early morning hours of July 6, 1973, when appellant stopped and gave them a ride. They stopped at a roadside tavern to buy beer. The trip continued with three more stops during which appellant propositioned his passengers to engage in sexual acts. The last stop was in a secluded, wooded area where Ms. Grimm agreed to submit to appellant's demands if he would then take them home.

After engaging in sexual acts with appellant, Ms. Grimm asked Ms. Johnson to likewise submit to appellant's demands. When Ms. Johnson refused, appellant tried to pull her from the car. A struggle ensued during which appellant struck both women about the head and neck with a blunt instrument. Ms. Johnson escaped into the woods. Ms. Grimm's wounds were fatal.

Appellant was arrested in North Carolina and brought to Westmoreland County where he was indicted. A motion for change of venue was granted because of adverse pre-trial publicity and the case was transferred to Northampton County for trial.

At trial, appellant did not deny the slaying but contended it was voluntary manslaughter. He introduced psychiatric testimony to prove that he killed Ms. Grimm in the heat of passion. He did not testify on his own behalf. In a statement to the police which was introduced by the Commonwealth at trial, appellant claimed that one of the two women first struck him with a blunt instrument which he took away and used against the women.

appellant had participated in bank robberies; and (4) directing defense counsel not to comment on the failure of the Commonwealth's psychiatrist to testify and ruling that he would not instruct the jury as to the adverse inference rule.

## II

The prosecutor's remarks which form the basis of this appeal were made during closing argument. They are as follows:

> "In this case distinguished defense counsel . . . got up before you to tell you that on behalf of their client they accept the responsibility of voluntary manslaughter. Well, at first blush it would seem to be a magnanimous gesture. Why would they do that? You know, oftentimes to avoid the true and final verdict you get up before a jury and are willing to accept and tell the jury that your client is guilty of a lesser offense. You try to becloud the issue . . . by saying: 'I am guilty. Judge me.' It is smart; it is shrewd. I hope that you people here in this jury box . . . are not deceived by such trial tactics.
>
> Ladies and gentlemen of the jury, Merle Ronald Gillman is a cold-blooded killer. Merle Ronald Gillman is cunning, he's sly, he's calculating, he's deceiving. He does not deserve your consideration, your pity, nor your sympathy.
>
> .   .   .   .   .   .   .   .
>
> What forms the basis or the alleged basis of this effort to sneak out with a voluntary manslaughter is this statement here, made approximately five days after the offense occurred. Right after Merle Ronald Gillman coldly and brutally beat severely Lee Ann Grimm to her death, he took off for North Carolina.
>
> MR. GALLOWAY [defense counsel]: If the court please, I object to that as being not supported in the evidence.
>
> THE COURT: The objection is overruled.
>
> .   .   .   .   .   .   .   .
>
> MR. MARTIN [district attorney]: (continuing to the jury): He went down to North Carolina, and five

days he had a chance to think, to connive, to concoct the story, and this is the story that he came up with, an incredible story to try to justify that cold blooded brutal murder of Lee Ann Grimm.

. . . . . . . .

In this case one man, Merle Ronald Gillman, he decided as judge, jury, prosecutor, and ultimately executioner on Lee Ann Grimm—one man. Lee Ann Grimm had no trial like this without judge, no jury. He decided right here. He made all the decisions. He beat that girl viciously, broke her neck, delivered her such extensive injuries—you heard Dr. Inquito up here— beat her like a dog. Sandy Johnson said that he beat her until there were no more groans or moans coming out of that human body. That's how badly he beat that girl. Any why? Why did Merle Gillman do that?

Let me tell you something. Soon after he killed Lee Ann Grimm and Sandy Johnson ran away, he went searching for Sandy Johnson, up and down that road. Recall the testimony. One witness to that perverted act was already gone, will not testify—no Lee Ann Grimm sat in this chair—and I submit to you that had he got Sandy Johnson, Sandy Johnson would not have been sitting in this chair. No witnesses to that act.

MR. GALLOWAY: If the court please, may we approach the bench?

(Counsel appear at side bar.)

MR. GALLOWAY: If the court please, I object to the demeanor of the district attorney. He is virtually yelling at the jury. I object to the argument, which is designed to appeal only to the emotions of the jury rather than to their reason. I think it is improper conduct for the district attorney, and I ask for a mistrial.

. . . . . . . .

THE COURT: . . . [B]ecause the question of provocation is a very important one, I think he has a

right to argue what he was arguing. I think it was argumentative. To that extent the objection is overruled."[3]

### III

At the outset, we must decide whether appellant made a timely objection to the quoted remarks. The Commonwealth contends that appellant waived his objection to all of the prosecutor's remarks except those immediately preceding the objection. We do not agree.

A defendant may waive his objection to an improper closing argument by failing to raise it at trial. *Commonwealth v. Davenport*, 462 Pa. 543, 342 A.2d 67 (1975); *Commonwealth v. Mennyweather*, 458 Pa. 12, 329 A.2d 493 (1974); *Commonwealth v. Brooks*, 445 Pa. 75, 309 A.2d 732 (1973); *Commonwealth v. Allen*, 443 Pa. 15, 276 A.2d 539 (1971). The purpose of requiring objection to improper argument is to bring the error to the attention of the trial court so that the court may attempt to cure it. *Commonwealth v. Sampson*, 454 Pa. 215, 311 A.2d 624 (1973). See also *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974). If a defendant raises an objection to the impropriety of a prosecutor's summation in time for curative instructions, the issue is not waived. See *Commonwealth v. Adkins*, 468 Pa. 465, 364 A.2d 287 (1976).

In *Commonwealth v. Adkins*, supra, we held that an objection made immediately after the completion of a prosecutor's closing argument was timely. We stated:

"[S]ince the argument was recorded and its contents undisputed, the trial court had . . . adequate op-

---

**3.** A second motion for a mistrial was made later in the argument after the prosecutor stated: "This case is very important. This case is important . . . to the defendant and the Commonwealth. The case is important to Lee Ann Grimm." The trial court denied the motion. Since we have determined that the prosecutor's earlier comments deprived appellant of a fair trial, we need not determine whether the later statement mandates a new trial.

portunity to correct the effect of the assistant district attorney's improper argument. Hence, we are not persuaded the objection was untimely."[4]

Id. at 472, 364 A.2d at 290.

■■ Appellant's objection offered the trial court adequate opportunity to correct the effect of the prosecutor's statement.[5] He interrupted the prosecutor's summation with a specific objection to the entire line of argument. The argument was recorded and its contents were not disputed. Since an objection made at the close of the argument would have been sufficient under *Adkins*, clearly appellant's objection, interposed during the closing argument, was timely. His objection to the inflammatory nature of the prosecutor's argument encompassed all improper remarks made up to the moment the objection was raised.[6]

4. In *Adkins*, we also recognized that there can be situations in which a single objection at the end of a closing argument may not be timely.

> "Where the argument is not recorded, there is a need to require an objection during the argument so that the remarks may be placed in the record at or about the time they are made and thereby ensure accuracy. Otherwise, the recollection of both counsel and the court at the conclusion of the argument may differ and thereby result in unnecessary factual disputes."

468 Pa. at 472, 364 A.2d at 291.

5. We do not decide whether cautionary instructions would have cured the prosecutor's conduct in this case. However, assuming that instructions would have been sufficient, appellant raised his objection in time for the trial court to give such instructions. Thus, for purposes of determining whether appellant's objection was timely, the trial court had "adequate opportunity" to correct the error.

6. Were we to accept the Commonwealth's theory of timeliness, defense counsel would be required to object after each sentence uttered by the prosecutor or risk waiving a possibly valid objection. Such a requirement would place an unreasonable and unnecessary burden on defense counsel. Bearing in mind the reason for requiring an objection at trial to the prosecutor's closing remarks, such a procedure could seriously disrupt the trial with no gain in either the quality or the effectiveness of the proceeding. Furthermore, the full prejudicial nature of the closing remarks may not be immediately recognizable through no fault of counsel because they may be cumulative in nature.

## IV

■■ Turning to the remarks themselves, we begin by repeating what this Court has said many times: the prosecutor is a quasi-judicial officer representing the Commonwealth. His duty is to seek justice, not just convictions. E. g., *Commonwealth v. Collins*, 462 Pa. 495, 341 A.2d 492 (1975); *Commonwealth v. Revty*, 448 Pa. 512, 295 A.2d 300 (1972); see ABA Project on Minimum Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function, the Prosecution Function, § 1.1 (Approved Draft, 1971) [hereinafter cited as ABA Standards]; Pennsylvania Supreme Court Code of Professional Responsibility EC 7-13 (1974).

"Although the prosecutor operates within the adversary system, it is fundamental that his obligation is to protect the innocent as well as to convict the guilty, to guard the rights of the accused as well as to enforce the rights of the public."

ABA Standards § 1.1, commentary at 44; See *Commonwealth v. Toth*, 455 Pa. 154, 314 A.2d 275 (1974).

During closing argument, the prosecutor has an obligation to

" . . . present the facts so that the jury can dispassionately and objectively evaluate the testimony in a sober and reflective frame of mind that will produce judgment warranted by the evidence and not inspired by emotion or passion."

*Commonwealth v. Harvell*, 458 Pa. 406, 411, 327 A.2d 27, 30 (1974). The prosecutor's position as both an administrator of justice and an advocate "gives him a responsibility not to be vindictive or attempt in any manner to influence the jury by arousing their prejudices." *Commonwealth v. Revty*, 448 Pa. at 516, 295 A.2d at 302, and cases cited therein; *Commonwealth v. Collins*, supra;

*Commonwealth v. Toth,* supra; *Commonwealth v. Bubnis,* 197 Pa. 542, 47 A. 748 (1901). In particular, the prosecutor must limit his argument to the facts in evidence and legitimate inferences therefrom. E. g., *Commonwealth v. Revty,* supra; ABA Standards § 5.8, supra.[6a]

■ Our decisions have firmly established that the prosecutor may not express his personal opinion regarding a defendant's guilt,[7] credibility[8] or trial strategy.[9] Nor may the prosecutor intentionally misstate the evidence given at trial in order to mislead the jury[10] or refer to words a decedent-victim might have uttered were

**6a.** Section 5.8 reads as follows:
    "(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.
    (b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.
    (c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.
    (d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict."
    Our decisions have often relied upon this section. E. g., *Commonwealth v. Collins,* supra; *Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975); *Commonwealth v. Lark,* 460 Pa. 399, 333 A.2d 786 (1975); *Commonwealth v. Harvell,* supra; *Commonwealth v. Lipscomb,* 455 Pa. 525, 317 A.2d 205 (1974).

**7.** *Commonwealth v. Cronin,* 464 Pa. 138, 346 A.2d 59 (1975); *Commonwealth v. Collins,* supra; *Commonwealth v. Lark,* supra; *Commonwealth v. Lipscomb,* supra; *Commonwealth v. Gordon,* 431 Pa. 512, 246 A.2d 325 (1968); *Commonwealth v. Capalla,* 322 Pa. 200, 185 A.2d 203 (1936); Pennsylvania Supreme Court Code of Professional Responsibility DR 7–106(C)(4) (1974).

**8.** *Commonwealth v. Collins,* supra; *Commonwealth v. Stoltzfus,* supra; Pennsylvania Supreme Court Code of Professional Responsibility DR 7–106(C)(4). Cf. *Commonwealth v. Potter,* 445 Pa. 284, 285 A.2d 492 (1971).

**9.** See *Commonwealth v. Collins,* supra.

**10.** *Commonwealth v. Toth,* supra; *Commonwealth v. Goosby,* 450 Pa. 609, 301 A.2d 673 (1973); *Commonwealth v. Revty,* supra.

he still alive.[11]  We have ruled that "[t]he determination of guilt must *not* be the product of fear or vengeance, but rather intellectually compelled after a disinterested, impartial and fair assessment of the testimony that had been presented." *Commonwealth v. Harvell, supra,* 458 Pa. at 411, 327 A.2d at 30 (emphasis in original).

Here, the prosecutor continually exceeded the bounds of permissible argument.  First, he disparaged the legitimate defense strategy of admitting a lesser degree of guilt and seeking acquittal of the higher degree.  The prosecutor described it as an attempt to "becloud the issue," "deceive" the jury and "sneak out" with a lesser verdict.  In *Commonwealth v. Collins,* supra, this Court condemned a prosecutor's statement that the defense was setting up a "smoke screen" and attempting to "throw mud in the eyes of the jurors."

After thus dealing with defense counsel, the prosecutor turned his attack upon appellant, characterizing him as a "cold-blooded killer," "sly," "calculating," and "deceiving."  In *Commonwealth v. Lipscomb,* supra, Mr. Justice Eagen, speaking for a unanimous Court said:

> " 'It is no[t] part of a district attorney's duty, and it is not his right, to stigmatize a defendant.  He has a right to *argue* that the evidence proves the defendant guilty  .   .   .   but for the *district attorney himself to characterize* the defendant as a "cold-blooded killer" is something quite different.' "  (emphasis in original).

455 Pa. at 528, 317 A.2d at 207, quoting *Commonwealth v. Capalla,* supra at 206, 185 A. at 206 (1936).  Accord, *Commonwealth v. Lark,* supra.  The prosecutor's statement was an unprofessional expression of his personal belief as to appellant's guilt and credibility.  ABA Standards § 5.8(b), supra.  See Pennsylvania Supreme Court

---

11.  *Commonwealth v. Harvell,* supra; *Commonwealth v. Lipscomb,* supra.

Code of Professional Responsibility DR 7–106(C)(4) (1974). See also notes 7 and 8, supra.

In *Commonwealth v. Potter*, 445 Pa. 284, 285 A.2d 492 (1971), this Court reversed a conviction because the prosecutor branded defendant's testimony a lie. We stated there:

"[The prosecutor] injected his highly prejudicial personal opinion of appellant's credibility into evidence, thereby clearly and improperly intruding upon the jury's exclusive function of evaluating the credibility of witnesses."

Id. at 287, 285 A.2d at 493 (citations omitted).

In *Commonwealth v. Cronin*, 464 Pa. 138, 346 A.2d 59 (1975), this Court reversed the conviction because the prosecutor expressed his personal opinion of defendant's guilt.

"[A] prosecuting attorney may not indulge in personal assertions of guilt of a defendant either by direct statement or indirectly by figure of speech."

Id. at 143, 346 A.2d at 62.

"[S]uch *personal assertions* by the prosecutor on the guilt of the accused were beyond the scope of fair play and were reversible error."

Id. at 142, 346 A.2d at 61, quoting *Commonwealth v. Lark*, 460 Pa. 399, 404–05, 333 A.2d 786, 789 (1975) (emphasis in original).

Finally, the prosecutor referred to appellant as "executioner" and stated that he "beat her like a dog . . . until there were no more groans or moans, coming out of that human body." He added that if appellant "had got Sandy Johnson, Sandy Johnson would not have been sitting in this chair." The foregoing remarks constituted an improper appeal to the passions and prejudices of the jury. Their obvious purpose was to divert the inquiry

from a reasoned pursuit of truth.[12] See *Commonwealth v. Harvell,* supra; *Commonwealth v. Lipscomb,* supra.

Moreover, the prosecutor attempted to inflame the jury by emotional references to the decedent: "Lee Ann Grimm had no trial like this, without judge, no jury." "One witness to that perverted act was already gone, will not testify—no Lee Ann Grimm sat in this chair . . . . " We have condemned such attempts to distract the jury from its duty to evaluate the evidence by evoking the memory of the victim. See *Commonwealth v. Harvell,* supra; *Commonwealth v. Lipscomb,* supra.

## V

In our view, the prosecutor's closing argument was an emotional harangue which exceeded the bounds of fair play and decency. This effort to inflame the jury and obtain a verdict inspired by revulsion rather than reason was extremely prejudicial. A new trial is required when an improper remark is prejudicial, i. e., when it is of such a nature or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial. *Commonwealth v. Goosby,* 450 Pa. 609, 301 A.2d 673 (1973).

Accordingly, the judgment of sentence is reversed and a new trial is ordered.

JONES, C. J., did not participate in the consideration or decision of this case.

NIX, J., dissents.

12. We reject the Commonwealth's assertion that these remarks related to "the opportunity to premeditate, the use of deadly force, and the awareness by [appellant] of his acts both before and after the killing." Rather, in graphically describing the beating and suggesting that the jury imagine that appellant had killed Sandy Johnson, a witness the jury had earlier seen and heard, the prosecutor sought to elicit a "visceral and unreasoned" jury response. *Commonwealth v. Harvell,* 458 Pa. at 411, 317 A.2d at 30.