J.S26044/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHARIF MYRICK, | : | |
| | : | |
| Appellant | : | No. 1633 EDA 2011 |

Appeal from the Judgment of Sentence May 16, 2011
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: CP-51-CR-0002987-2010

BEFORE: BENDER, P.J.E., SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JANUARY 20, 2015**

Appellant, Sharif Myrick, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following his jury convictions for murder in the first degree and carrying a firearm in public.[1] He argues: (1) the evidence was both insufficient and weak to establish he was the person who shot Decedent; and (2) the Commonwealth, in its closing argument, improperly vouched for the credibility of a witness and expressed a personal opinion of Appellant's guilt.  We affirm.

The victim in this matter is Shariff Jenkins ("Decedent").  The trial

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(a), 6108.

court summarized the trial evidence as follows:

> On June 22, 2009, after having spent the day together, Decedent . . . and his friend, John Mincer, ended up in the evening in the courtyard of Morton Homes located at Morton and Rittenhouse Streets, Philadelphia, PA. Mincer was sitting on a wall near the courtyard when he observed Decedent and Appellant engage in an argument. Mincer also heard gunshots being fired. Katrina Jenkins, Decedent's mother, testified that Mincer told her that prior to the shooting[,] Appellant and Decedent had played a number of dice games which Decedent had won and shared his winnings with Appellant. However, when the last game was won by Decedent[,] he refused to share the money and an argument ensued. [Jenkins further testified that Mincer told her] Decedent and Appellant separated, **but Appellant returned with a gun and shot the Decedent**.

Trial Ct. Op., 7/11/13, at 1-2 (unpaginated) (citations to trial transcripts omitted) (emphasis added). The medical examiner testified that Decedent suffered gunshot wounds to the back, right knee, and right forearm.

Appellant was charged with shooting and killing Decedent. A four-day jury trial commenced on May 11, 2011. On May 16th, the jury found him guilty of murder in the first degree and carrying a firearm in public in Philadelphia. That same day, the trial court imposed a sentence of life imprisonment and a consecutive 2½ to 5 years' imprisonment. Appellant did not file a post-sentence motion, but took this appeal.[2]

---

[2] Appellant's trial counsel, James Bruno, Esq., filed a timely notice of appeal on June 15, 2011, but failed to file a court-ordered Pa.R.A.P. 1925(b) statement. On January 27, 2012, this Court dismissed the appeal for counsel's failure to file a brief. Attorney Bruno filed an application for reconsideration, upon which this Court reinstated the appeal on March 7,

Appellant first claims on appeal he is entitled to an arrest of judgment for his first-degree murder conviction. Specifically, he avers the Commonwealth presented both insufficient and "weak and conclusive [sic] evidence" that he was the person who shot and killed Decedent. Appellant's Brief at 9, 11. In support, Appellant avers that neither witness Sakeena Harris nor Cherelle Jeffries said she saw him at the crime scene. Instead, Appellant claims, their testimony gave "rise to the inference that detectives wrote things in the statements presented that were not there when the two were interviewed." *Id.* at 10. Appellant also asserts the Commonwealth's "star witness," John Mincer, "gave several versions of what allegedly occurred[:]" Mincer "first told police he saw nothing," "then told detectives . . . [A]ppellant and [D]ecedent were together and appeared to be arguing," and then told police at the next interview that he could not see who was firing shots. *Id.* Appellant further reasons that although there was evidence he was standing next to Decedent just prior to the shooting, "the medical

_____

2012. On June 27, 2012, this Court ordered Attorney Bruno to file a brief by July 23rd. In the interim, Appellant filed a *pro se* petition to withdraw his counsel. On August 6th, this Court granted Appellant's *pro se* petition, dismissed Attorney Bruno, and directed the trial court to appoint new counsel.

Subsequently-appointed counsel, Sondra R. Rodrigues, Esq., then filed an application for relief with this Court, arguing any appellate brief would be moot due to prior counsel's failure to preserve any issue in a 1925(b) statement. In response, on January 15, 2013, this Court remanded to the trial court to allow counsel to file a 1925(b) statement. The statement was filed, and we may now dispose of this appeal. Attorney Rodrigues continues to represent Appellant in this appeal.

examiner testified that the shots were [fired] most likely from a distance."

*Id.* at 11.  We find no relief is due.

This Court has stated:

> In reviewing sufficiency of evidence claims, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all the elements of the offense. Additionally, to sustain a conviction, the facts and circumstances which the Commonwealth must prove, must be such that every essential element of the crime is established beyond a reasonable doubt.  Admittedly, guilt must be based on facts and conditions proved, and not on suspicion or surmise.  . . .   Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The fact finder is free to believe all, part, or none of the evidence presented at trial.

*Commonwealth v. Hogentogler*, 53 A.3d 866, 874-75 (Pa. Super. 2012)

(citation omitted), *appeal denied*, 69 A.3d 600 (Pa. 2013).  Moreover,

> [i]n assessing the sufficiency of the evidence to establish that a homicide was committed and that the person or persons charged were those responsible, we are called upon to consider all of the testimony that was presented to the jury during the trial, without consideration as to the admissibility of that evidence.  The question of sufficiency is not assessed upon a diminished record.

*Commonwealth v. Smith*, 568 A.2d 600, 602-03 (Pa. 1989); *accord*

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011).

To establish first-degree murder, the Commonwealth must prove: "(1) a human being was unlawfully killed; (2) the person accused is responsible for the killing; and (3) the accused acted with specific intent to kill.  18

Pa.C.S.A. § 2502(a), (d)[.]" **Commonwealth v. Bedford**, 50 A.3d 707, 711 (Pa. Super. 2012) (*en banc*) (some citations omitted). Instantly, Appellant challenges only the evidence as to whether he was responsible for the killing.

Appellant correctly summarizes that Mincer, who testified as a Commonwealth witness, gave inconsistent statements. We note that Mincer repeatedly stated that throughout this case, he did not want to be a witness.[3] N.T. Trial, 5/12/11, at 51, 52-53, 63-66. At trial, Mincer stated that just before the shooting, he saw Appellant and Decedent having an "[u]nfriendly" conversation or argument. *Id.* at 46-47. **When asked who fired the shots, Mincer testified, "I'm not too sure.**" *Id.* at 40 (emphasis added).

The Commonwealth confronted Mincer with the statement he gave on the night of the incident at the police station. *Id.* at 48-49. In that statement, Mincer told police he "didn't see nothing" and did not "know nothing." *Id.*

The Commonwealth then introduced a second statement to police, made on July 28, 2009, approximately five weeks after the incident. In this interview, Mincer stated that at the time of the shooting, he had known Appellant for a month and that **he saw Appellant fire the gun**. At trial,

---

[3] Mincer also testified that he did not appear on his own volition, but instead was arrested because he did not want to testify. N.T., 5/12/11, at 65.

the Commonwealth questioned Mincer about this statement as follows:

> [Commonwealth:]  And you answered that way because you saw [Appellant] do it?
>
> [Mincer:]  No, because I knew they were talking.
>
>           *　　*　　*
>
> Q.    But you see that you said in answering that question, "When you heard the first shot, were you able to see who was firing the gun?"
>
> Your answer was, "Yes, it was [Appellant]."
>
> A.  Yes.
>
>           *　　*　　*
>
> Q.  And you're saying now that's not correct, you didn't see that?
>
> A.  No, I said it.
>
> Q.  **You said it because you saw it?**
>
> A.  **Yes**.

*Id.*  at 57-58 (emphases added).

On cross-examination,[4] defense counsel twice asked Mincer if he saw Appellant shoot the gun, and Mincer replied, "No." *Id.* at 93.  Mincer also

---

[4] In his questioning on cross-examination, Appellant's counsel also made it known to the jury that Decedent had twenty-three packets of cocaine on his person when he was shot.  N.T., 5/12/11, at 72.  Counsel then asked Mincer if there was drug dealing in addition to gambling in that area, and Mincer replied, "I guess so."  *Id.*  Nevertheless, Mincer testified he did not know Decedent had those drugs on him and never saw Decedent selling drugs. *Id.*

stated he was lying when he previously told police he saw Appellant shoot Decedent. *Id.* at 96.

Finally, we note the Commonwealth asked Mincer if, after trial had commenced, he had a conversation with Decedent's mother about the shooting. *Id.* at 99. Mincer denied such a conversation.

We next review the testimony of Decedent's mother, Katrina Jenkins, which the trial court cited in its opinion. Jenkins testified that three days earlier, and before Mincer testified at trial, she and Mincer had the following conversation in a private room for witnesses in the courthouse.[5] Mincer talked about his friendship with Decedent and told Jenkins, "[I]f you want me to testify I would." N.T. at 114. Jenkins testified they had the following exchange: "I told [Mincer] not to testify for me. I said, 'You do what you feel is right and you do it for the love and friendship you said you had with

---

[5] Out of the jury's presence, the parties argued about the admissibility of this testimony. *Id.* at 106-09. Appellant's counsel did **not** argue that Jenkin's testimony about Mincer's statements would be hearsay, but instead asserted, "[M]y main objection [is] what this witness . . . heard on the street or what he's assuming. . . . [W]e don't know if it was something he heard[.]" *Id.* at 108. The Commonwealth argued: (1) the testimony went to Mincer's credibility, where he had recanted his earlier statements; and (2) the conversation would show what Mincer said when he was "relaxed" and not speaking as "a witness." *Id.* at 107-08. The court reasoned that defense counsel had the opportunity to cross-examine Mincer, and Jenkins' testimony would not be admitted for the truth of the matter, but would go to Mincer's credibility. *Id.* at 108-09. The court thus allowed the testimony but advised Appellant's counsel, "You have the right to object if the testimony develops in terms of how the testimony develops [sic], but on the fact of it at this point I will allow [the testimony.]" *Id.* at 110. Jenkins then testified as we summarized above, without objection from Appellant.

my son.' [Mincer] told me, okay. And he would do it." *Id.*

Jenkins testified that she then asked Mincer what happened that evening. According to Jenkins:

> [Mincer] said that my son [Decedent] had been drinking. He was worried about getting locked up the next day because it would violate his probation from the drugs in his system. He told me that he had been drinking since 3 o'clock that afternoon up until that night.
>
>   He told me that [Decedent] and [Appellant] were gambling. He said that my son [Decedent] was winning. They gambled three times that night and each time my son had beat [sic]. He said that each pot my son had won. He gave [Appellant] a cut which is considered some money of the winnings. He said the third time that they had gambled and [Decedent] won, [Decedent] wouldn't give him a cut. He said it didn't make sense because all he was doing was winning back his own money. Words were exchanged, [Decedent] was supposed to have pushed [Appellant] and more words, both walked away. And he said the next thing he know [sic] **[Appellant] came through a parking lot and started shooting**.

*Id.* at 115-16 (emphasis added).

On cross examination, Appellant's counsel asked Jenkins if Mincer "was telling [her] what he had heard[ or] a combination of what he heard or saw." *Id.* at 117. Jenkins replied that she did not ask him and agreed that she did not "know whether it is what [Mincer] saw or what he heard." *Id.*

On appeal, Appellant cites Mincer's statements that he either saw nothing or did not see who fired the gun. However, Appellant disregards Mincer's July 28, 2009 statement to police that he saw Appellant shoot Decedent. Crucially, Appellant also fails to acknowledge Jenkins' testimony

that Mincer told her Decedent exchanged words with and pushed Appellant, after which Appellant left, but returned and started shooting. In light of this evidence, we reject his claim that the evidence was insufficient to show he was the shooter. *See Hogentogler*, 53 A.3d at 874-75; *Smith*, 568 A.2d at 602-03. Accordingly, we further find Appellant's arguments concerning the testimony of Sakeena Harris and Cherelle Jeffries meritless.

To the extent Appellant challenges the weight of the evidence, *see* Appellant's Brief at 11 (stating conviction "arose from weak and conclusive [sic] evidence"), we find such a claim waived for failure to raise it before the trial court. *See* Pa.R.Crim.P. 607(A)(1)-(3); *Commonwealth v. Griffin*, 65 A.3d 932, 938 (Pa. Super. 2013).

Appellant's second claim on appeal is that the Commonwealth committed prosecutorial misconduct for making three inappropriate comments in its closing argument. First, he avers the Commonwealth improperly "vouched for the credibility of John Mincer, indicating that he had always wanted to put the blame of the murder on" Appellant. Appellant's Brief at 13 (citing N.T., 5/16/11, at 40-42). Second, Appellant asserts the Commonwealth stated facts not in evidence, specifically the number of shots fired and why there not more. *Id.* (citing N.T., 5/16/11, at 41-46). Finally, Appellant alleges the Commonwealth improperly expressed its opinion of his "guilt by stating that he was not in his usual places, because he 'knew what he had done.'" *Id.* at 13 (citing N.T., 5/16/11, at 47). He contends these

comments "created such prejudice there could be no objectivity" by the jury. *Id.* at 12. We find these claims waived.

A t trial Appellant raised no objections to these comments, either contemporaneously or at the end of the Commonwealth's closing argument. Accordingly, any appellate challenge is waived. *See Commonwealth v. Gilman*, 368 A.2d 253, 256 (Pa. 1977) (stating: (1) defendant may waive objection to improper closing argument by failing to raise it at trial; (2) purpose of requiring objection is to bring error to trial court's attention so that court may attempt to cure it; and (3) if defendant raises objection to impropriety of prosecutors summation in time for curative instructions, issue is not waived); *Commonwealth v. Rose*, 960 A.2d 149, 154 (Pa. Super. 2008) (stating challenge to comment in Commonwealth's closing argument was not waived where defendant waited until end of closing argument to object with sufficient specificity and request mistrial).

Finding no basis for relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/20/2015

- 10 -