143 503
157 190
143 503
33 SC 7172

</div>

## J. W. HOFFMAN v. BLOOMSBURG ETC. R. CO.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF COLUMBIA COUNTY.

Argued April 13, 1891—Decided October 5, 1891.

(a) The plaintiff, in an action against a railroad company to recover damages for the taking of and injury to his lands, had executed an agreement in writing that he would release " to the company which undertakes to construct such road, the right of way of lawful width " through his land.

(b) As to damages, the agreement provided as follows: " The damages to be assessed when the road is located, and the amount of said damages to be paid in stock of said railroad. Cost of fencing not included in damages, provided no damage is done to my buildings, race, or waterpower: "

Statement of Facts.

1. It was error to charge that the proviso related to the whole agreement, and that if no damage was done to the plaintiff's buildings, race, or water-power, the jury could find that the general damage was payable in stock; and that otherwise, it would be payable in cash.

2. The proper construction of the proviso is, that the cost of fencing shall not be included in damages, if no damage is done to the buildings, race, or water-power; that is, if no damage is done to the buildings, race, or water-power, no damage is to be *allowed* for the cost of fencing.

3. Defendant company was not estopped from alleging said instruction for error, by the fact that on the trial its counsel made a verbal statement, when offering the agreement, to the effect that if the water-power was injured the damage was to be a money assessment: Benson v. Maxwell, 105 Pa. 274; Ritter v. Sieger, 105 Pa. 400, distinguished.

4. It was error, also, to instruct the jury that, "under the agreement, it was the duty of the defendant so to construct its railroad as not to interfere with the plaintiff's water-power and race." The proviso did not prohibit the company from interfering with the water-power and race.

5. As it was shown that there were several buildings on the land, in close proximity to the railroad, the fact that specific evidence was not given in relation to danger from fire, did not exclude that subject from consideration by the jury, in estimating the value of the whole property as affected by the railroad.

6. It is not reversible error, that plaintiff's counsel, in the closing argument to the jury, illustrated the force of a relevant physical fact, by the use of apparatus not previously exhibited in evidence, and that the court, in the charge to the jury, commented upon the conclusive effect of the illustration.

7. An instruction to the jury in language from which the inference might be drawn, that, having themselves viewed the premises, they might substitute their own opinions as to the injuries to the land, for those of the witnesses regarded in a mass, was error: Flower v. Railroad Co., 132 Pa. 524.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

No. 44 July Term 1890, Sup. Ct.; court below, No. 34 September Term 1887, C. P.

On September 21, 1887, an appeal was filed from the report of viewers assessing damages in favor of John W. Hoffman against the Bloomsburg & Sullivan Railroad Company, for land taken and injured by the location and construction of the defendant company's railroad. Issue.

At the trial, on October 1, 1889, the plaintiff introduced testimony showing, as was claimed, that he owned a farm of

about one hundred and thirty-four acres along Big Fishing-creek, upon which were erected two dwelling-houses, a barn and farm buildings, a grist-mill and a saw-mill, the mills being driven by water-power; that in 1886–87 the defendant company entered upon his land and located and constructed its railroad through it for a distance of 4889 feet; that the railroad was constructed across both the head-race and the tail-race of the mills, and in the dam or pool on the eastern side for a distance of about 1200 feet; that the tail-race was changed, with the effect of preventing the water from flowing away from the turbine water-wheels freely; that the head-race was changed also, so as to prevent the water from feeding the wheels fully and properly, and that the channel of the dam or pool was so filled, by blasting and working down the hill-side to form the roadbed, as to change the current of the pool and diminish the power of its water supply; that, moreover, by means of a dam or structure of planks and scantling, driven down at the throat of the head-race for the purpose of permitting a change of the latter by the company, its remains being afterwards imperfectly removed, the washings from the railroad embankment collected and filled up the pool to the depth of four feet, at the throat of the race, and sloping thence about four hundred feet, further injuring the power of the water supply. With testimony as to the foregoing facts, plaintiff showed the proximity of the railroad to the buildings upon the land, and a depreciation in the market value of the mill properties ranging, in the opinions of the witnesses, from $3,500 to $6,000.

The defendant company, in its case in chief, showed that on September 4, 1886, the board of directors of the company accepted and ratified certain agreements theretofore made with landowners along the line of the road, one of which was as follows :

" I hereby agree in behalf of the railroad to be constructed along the valley of the Big Fishingcreek, from a point near its mouth and following its general course to Cole's creek, thence, by the most eligible route, along the gorge of its eastern branch into Sullivan county, to connect with the State Line & Sullivan Railroad to be extended to the state line at or near Waverly, that I will release to the company which undertakes to construct such road, the right of way of lawful width through my

land in Orange township, Columbia county, Pennsylvania; the damages to be assessed when the road is located, and the amount of said damages to be paid in stock in said railroad. Cost of fencing not included in damages, provided no damage is done my buildings, race or water-power.

"Witness,                              JOHN W. HOFFMAN."
"H. J. CONNER."

It was shown, also, by the defendant, ·that this agreement was signed by the plaintiff in 1882 or 1883, when the building of the railroad was first set on foot, and that the ̇plaintiff frequently recognized its existence and validity while the railroad was constructing in 1886 and 1887.

The "agreement or release" being offered in evidence by the defendant, the plaintiff objected, on the ground· that it was obtained prior to the organization of the defendant company, and, inter alia, "because the condition of the paper itself shows to the court, as by the evidence already adduced in this case on the part of both parties and uncontradicted by the defendant, the violation of the agreement or paper; and therefore, the agreement so far as the plaintiff is concerned must be considered as rescinded."

Mr. Buckalew: "The object is to show, first, that the railroad company entered by consent of the defendant (plaintiff?) upon his premises, to construct their line of road; secondly, that there was an agreement between the parties for the assessment, voluntary assessment, of any damages that might be occasioned to his property, and for the payment in capital stock of the company. We do not question that if the water-power is damaged, the defendant, under that agreement, is liable to a money assessment in this ̇suit. We do not deny that if the water-power is injured, the damage is to be a money assessment in this suit."

By the court: "Merely remarking that we think the offer is proper, we overrule the objection, and admit this release or paper without any further comment at this time; and give the plaintiff a bill."

Testimony on the part of the defendant company tended to show that the tail-race, and head-race, and part of the dam, though changed at places, were changed with the knowledge and assent of the plaintiff, and that they were as good if not

Charge of Court below.

better than before the company interfered with them; that they were as deep, and were entirely adequate to supply to and carry from the plaintiff's mills fully as great an amount and power of water as before; and that the lessened supply and power of the water, if any, were caused by the broken and unrepaired condition of the old dam.

At the close of the testimony, the court, IKELER, P. J., charged the jury in part as follows:

It seems that in 1882, or 1883, persons were prospecting for the location and building of a railroad upon the branch of Big Fishingcreek; and that some time in 1882 Captain Conner, now a director and the secretary of the company, with Hoffman, the plaintiff here, made an agreement, put in evidence as a "release," and it will be before you, formal in terms and in writing, signed by John W. Hoffman and witnessed by H. J. Conner, which instrument provides as follows: . . . .

The defence here is, that no damage has been done to the buildings, race, or water-power, and the allegation on the part of the defence is that the release has not been violated but is binding upon the parties.

I do not understand that any damage is claimed here on account of danger of fire from close proximity of the railroad to the buildings;—is there?

Mr. Barkley: Only such as the law allows us, that is all.

Then, in that respect, it is simply a question as to the general condition of the property as it was left, and we call your attention to the undisputed evidence on that point.

[The railroad is located seventy-two feet from the shed, seventy-four feet from the barn, one hundred forty-nine feet from the grist-mill, thirty-four feet from the tenant house, forty feet from the saw-mill; and you will judge, as men of experience, knowing how railroads are located, how near to buildings, and how they are managed, whether there is any danger apparent of injury from close proximity of these buildings to the railroad, arising from the careful and ordinary use and operation of the railway; because, if the buildings should be injured or destroyed, or if any other damage should occur, from the careless or negligent use and operation of the road, the plaintiff would be entitled to recover in a separate action for such injuries.] [1]

Charge of Court below.

[It is our duty to instruct you in reference to this agreement or release. If you find that no damage is done or has been done to the buildings, race, or water-power, then, according to this release, whatever damage has been done to the property in general, as for land taken, would be payable in stock of the railroad company, according to this agreement. Our construction of this agreement is, that the cost of fencing was excepted from that kind of payment, and to be ascertained and assessed, if any, detracting from the general value of the whole premises, and is payable in money value. The proviso or provision that no damage is done to my buildings, race, or water-power, that, we hold, relates to the whole agreement, and not to the single item of cost of fencing].[2]

We have been asked by counsel for the plaintiff to instruct you as follows:

1. That the depreciation in the market value of the plaintiff's property, as a water-power with grist-mill and saw-mill, may be shown by the evidence of the difference between the working capacity of the power upon the mills, at and about the time of the entry by the defendant to construct the railroad, before any work done, and the working capacity of the power upon the mills after the construction of the railroad and the change made by the defendant by its work upon the property.

Answer: That point is affirmed.

2. That the measure of damages to the property of the plaintiff as a water-power and mill property is the difference in the market value before and after the construction of the railroad and works of the defendant; and, in determining this difference, the jury should take into consideration the difference between the working capacity of the power upon the mills before and after; and the jury should also consider any unused or surplus water-power of the plaintiff for good and useful purposes, the water-power and mill property remaining as it was before the road was constructed; and should also consider all matters of inconvenience and increased expense and burden and risk in the use, maintenance and occupancy of the water-power and mills, occasioned by the works of the defendant, and also the danger of fire and the inconvenience of access and use of the buildings and grounds therewith connected.

Answer: We affirm this point also; with the explanation that it is with the careful and ordinary use and management and operation of the road; and we have also instructed you with reference to fire. This point is correct, with that explanation.[8]

6. That the jury, in estimating the damages to the plaintiff's property as a farm property, should take into consideration the depreciation in its market value by reason of quantity and quality of land taken and the manner of taking, the inconvenience arising from a division of the property or from increased difficulty of access, the burden of increased fencing, the ordinary danger of accidental fires to the fences, fields or farm buildings, not resulting from negligence; and, generally, all such matters as, owing to the particular location and manner of construction of the railroad, may affect the convenient use and future enjoyment of the property.

Answer: This point is correct. These elements are proper for your consideration, with the addition that the special advantages, not general to the whole community, are also a matter to be considered and set off against any damages arising from these several elements.[9]

7. That under the agreement offered by the defendant, it was the duty of the defendant so to construct the railroad as not to interfere with the plaintiff's water-power and race; and in this case the defendant should be held to a strict compliance with the conditions of the license in all respects.

Answer: That point is affirmed.[10]

On the part of the defendant we are asked to instruct you as follows:

1. That if the jury believe that by reason of the new race and new dam provided by defendant, Mr. Hoffman's water-power is not damaged, then, under the evidence and the written agreement for right of way, plaintiff can only recover if the total value of his property is diminished to that extent; payment to be in capital stock of railroad company.

Answer: That point is affirmed, as we have already instructed you.

2. That defendant company is a common carrier; that its railroad is a public highway; that plaintiff has a right in law to construct on his land adjoining said railroad a suitable

Charge of Court below.

switch for the uses of his business, and to connect the same with the tracks of the railroad company, subject to general rules of the company regulating such connections; and that the defendant company is bound to receive and deliver to and from such switch or siding, cars and freight for said plaintiff to and from such points on the line of defendant's railroad as may be designated by plaintiff, and on equal terms with other individuals or transportation companies.

Answer: That point is correct in the main. The railroad is not strictly a highway, in the sense that a public wagon-road is a highway; it is a highway for the general and exclusive use of the railroad for the accommodation of the public, and the company must accommodate and answer the calls or requirements of the public and of all individuals alike, and cannot refuse one and accommodate another, nor charge different rates for the same transportation for different individuals.

\*       \*       \*       \*       \*       \*       \*       \*

In making up your verdict, or in order to arrive at a just conclusion, you may consider separate items of alleged particular injury to the property, not suffered by the community in general; such as the land taken, the manner of taking and cutting the land, increased difficulty of operating the remainder, if there be any; the cost of fencing and of maintaining fences, if any are necessary, [the danger to buildings, crops and fences by fire, from a careful and ordinary operation of the road, not resulting from negligence in the use of the road; the injury to water-power, if any;] [7] and if, in considering all these, damage and disadvantages are found; if, considering all, you find damage and disadvantage, against such you may and should set off advantages, if any, that the building and operation of the road may bring or cause to the whole property or to any portion thereof, not common to the community but direct and peculiar to the property or the owner; such as switches and the bringing of material to and taking it from the manufacturing industries of the plaintiff, as to his grist-mill or saw-mill. . . . .

[Now you have seen an illustration of the power of water, given here in the argument of counsel for the plaintiff. It is a self-evident fact that height of water above the discharge gives weight, force and power to the discharge, as conclusively

Charge of Court below.

illustrated by Mr. Scarlet * in this case.] [3]   The complaint here is, the main complaint, that the force and power of the water in the head-race of Hoffman's mill is so diminished and weakened that it will not supply sufficient force or power to run his mills, to wit, his grist-mill and his saw-mill, as it formerly did; that the water in the forebay is lower now than it was before the construction of the railway; and, if it is, it seems to the court that the main inquiry then is whose act or fault was it, is it, that the same height of water is not there now; and whether the tail-race fails to discharge the flow of water from the grist-mill, as is alleged here, is a question of fact for you under all the evidence. On the part of the defendant the allegation here is that the funnel or mouth of the head-race will take in more water, draw the dam lower, and carry more water from the main branch to the forebay or the tail-race below, furnishing more height and power above the wheels, than the old race did. The allegation upon the part of the plaintiff is that on account of the changing of the current there is less depth of water there at the head-race. The complaint is that in the changed condition of the head-race it is so shallow that the water spreads upon it in a thin surface, and does not draw a sufficient amount from the pool of the dam or from the creek to supply the depth and force that formerly existed at the forebay.

[Now you have been there upon the ground, and you have heard the experts testify, civil engineers and hydraulic engineers, one or two; James C. Brown, a skilled professional hydraulic engineer, as well as Mr. Ostrander and Squire Neyhart; you have heard their testimony, and the testimony is that careful measurements were taken by their instruments of the depth of the race, and the evidence is that the measurements were taken from the same standpoint. It is not an unusual thing for engineers to differ in their measurements and surveys; so much

---

* In the closing argument to the jury, Mr. Scarlet, on behalf of the plaintiff, introduced by appliances provided for the purpose and not previously exhibited in evidence, a demonstration by physical experiment or illustration, that of two columns of water of the same diameter but of different heights, the higher would discharge more quickly and with greater power than the lower. It was objected at the time that the "experiment should have been introduced before the case was closed," but no exception was sealed.

Charge of Court below.

depends upon where they locate their instruments, and it is not unusual to locate them at different points ; but it is rather unusual that they should differ when they locate their instruments at the same point, to wit, at the red bolthead of the iron bolt. You will recall the evidence to your minds, in considering this question, and determine where the truth lies. It is a matter of judgment and experience. (By order of the court and with consent of the parties you went upon the premises and viewed them, so that you might have a more intelligent understanding of the evidence from knowing the lay of the land and the location of the railroad over it; and you may and should use your own observation and judgment, together with all the other evidence in the case, as to the damage sustained, if any, and the advantages accruing, if any, as well.) [4] [12]

In cases like the one on trial, witnesses may give, and they have in this case given their opinions as to the value of the property, because it is the value that is in dispute. It is therefore proper and competent for those who are sufficiently acquainted with the property to give an opinion upon the subject ; but it is the duty of the court to say to you that such opinions are subject to the qualification that the opinions of witnesses as to value are not binding upon you but persuasive merely ; if you are of a different opinion, you may find according to your own opinion. [The opinions of witnesses are to aid and assist you, if possible, in arriving at a just conclusion ; but you are not to lay aside your own observation and judgment, and accept the conclusions of witnesses, if you think them extravagant in being either too high or too low or incorrect in statement.] [5] It is not an unusual thing for witnesses in cases like the present to differ widely in their opinions as to the market value of the property before and after the construction of the road, in order to fix the difference which would be the damage sustained, some putting the difference at nothing and some up into thousands of dollars as they have done in this case. From your own individual observation and view upon the premises, together with all the evidence and the surroundings of the case, you are to decide this question between the plaintiff and the defendant according to your oath, to the law and to the testimony, doing equal and exact justice between them.

To recapitulate : The proper measure of the injury sustained

Charge of Court below.

by a landowner, by reason of an entry upon and appropriation of any portion of his land, is the difference between the market or selling value of his land immediately before and immediately after such entry and appropriation. In determining this difference in market or selling value, the advantages and the disadvantages resulting from the construction, operation and ordinary use of the road are to be taken into consideration. The advantages and the disadvantages are to be estimated upon the property and tract as a whole, and not upon each separate field, or piece, or part that has been touched or interfered with by the road. The question is, what was the value of the plaintiff's whole tract or property, the farm, the grist-mill, the saw-mill, and the land, immediately after the railroad had passed through it and immediately before; and the difference, if any, in dollars and cents would be the damages sustained. [That is, if any injury accrued to the water-power, the damage would be in dollars and cents, to be paid in cash: and if there was no injury to the water-power, then, as we have instructed you, the land damages, if there should be any, you should find payable in stock of the railroad company. The fencing and the burden of fencing, whatever it may be, as detracting from the value of the whole tract, the burden of maintaining fences, if any fences are necessary, that you would find payable in cash.] [11]

[It is entirely a question for the exercise of your best judgment, adapting the testimony of the witnesses to the land and to the location and construction of the road upon it, as you saw it, and also using your own judgment and knowledge in the matter;] [6] and upon whatever sum you shall find to be payable in dollars and cents the plaintiff would be entitled to interest from September, 1886, not as a separate item, not as interest, but to be added to the sum total as damages, from September, 1886, because that was the time agreed upon here or not in dispute, that the land was taken. . . . .

—The jury returned a verdict in favor of the plaintiff for $4,975.50. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning for error:

1–7. The portions of the charge embraced in [ ] [1 to 7]
8–10. The answers to the plaintiff's points. [8 to 10]

11, 12. The portions of the charge embraced in [ ] [11] [12]

*Mr. John G. Freeze* and *Mr. Charles R. Buckalew* (with them *Mr. L. E. Waller*), for the appellant.

That it was error to submit the question of damages from the danger of fire, counsel cited: Calvert v. Good, 95 Pa. 65; First N. Bank v. Williamsport Bank, 114 Pa. 1; Chartiers V. Gas Co. v. Lynch, 118 Pa. 362; Raby v. Cell, 85 Pa. 80; First N. Bank v. Wirebach, 106 Pa. 37; Heffner's Est., 134 Pa. 436. And it was error to allow counsel to use before the jury at the close of the argument a physical experiment not in evidence, against objection, and to instruct that the experiment was conclusive: Abbott's Trial Brief, 138; People v. Hope, 62 Cal. 291; Smith v. State, 2 Ohio 513; Insurance Co. v. Cheever, 36 Ohio 201 (38 Am. Rep., n., 573); Firemen's Ins. Co. v. Walden, 12 Johns. 513 (7 Am. Dec. 340); Gordon v. Little, 8 S. & R. 533 (11 Am. Dec. 632); Walker v. Stetson, 14 Ohio St. 89 (84 Am. Dec. 362); Rudolph v. Landwerlin, 92 Md. 34. That a view, when had, is to enable the jury to understand the evidence, not to make witnesses of them: Wright v. Carpenter, 49 Cal. 607; Close v. Samm, 27 Ia. 503; Hauser v. Commonwealth, 5 Am. Law Reg. 668; Insurance Co. v. Cheever, 36 Ohio 201 (38 Am. Rep. 573); Ortman v. Railroad Co., 32 Kas. 419; Winslow v. Morrill, 68 Me. 362; 12 Am. & Eng. Encyc. of Law, 376; Hartman v. Railroad Co., 22 W. N. 84; Flower v. Railroad Co., 132 Pa. 524. As to the construction of the agreement in evidence: North & W. Br. Ry. Co. v. Swank, 105 Pa. 555; Pierce on Railroads, 133; Rathbone v. Navigation Co., 2 W. & S. 74; Paschall v. Passmore, 15 Pa. 307; Mitchell on Real Estate, 179, 307.

*Mr. Charles G. Barkley* and *Mr. James Scarlet* (with them *Mr. L. S. Wintersteen*), for the appellee.

That the distance of the railroad from buildings, in evidence, was proof of danger from fire and authorized the submission of the question, counsel cited: Pittsb. etc. Ry. Co. v. McCloskey, 110 Pa. 436. The remedy for an improper presentation of a case in argument, is to move for a continuance at the time, not after having had a chance for a verdict: Moll v. Zimmerman, 1 Woodw. 502; but the illustration was of a well-known phy-

Opinion of the Court.

sical fact and caused no injury: Heysham v. Dettre, 89 Pa. 506; Commercial N. Bank v. Henninger, 105 Pa. 496; Dunkle v. Harrington, 101 Pa. 465; Entwisle v. Carey, 22 W. N. 127. The charge as to the effect to be given to the view, as a whole, was not misleading: Smith v. Meldren, 107 Pa. 348; Thompson on Trials, § 893. As to the construction of the agreement: Oliver v. Railway Co., 131 Pa. 413; McClinton v. Railway Co., 66 Pa. 404; and that a party litigant cannot complain if the case is submitted from his own point of view: Ritter v. Sieger, 105 Pa. 400; Benson v. Maxwell, 105 Pa. 274.

OPINION, MR. JUSTICE GREEN:

We are not able to agree with the learned court below in the interpretation given to the agreement signed by the plaintiff, in relation to the construction of the defendant's road on his land. It is in the following words, viz.:

"I hereby agree in behalf of the railroad to be constructed along the Big Fishingcreek, from a point near its mouth and following its general course to Cole's creek, thence, by the most eligible route, along the gorge of its eastern branch into Sullivan county, to connect with the State Line & Sullivan Railroad, to be extended to the state line at or near Waverly, that I will release to the company which undertakes to construct such road, the right of way of lawful width through my land in Orange township, Columbia county, Pennsylvania; the damage to be assessed when the road is located, and the amount of said damages to be paid in stock in said railroad. Cost of fencing not included in damages, provided no damage is done my buildings, race, or water-power.

"Witness:                           JOHN W. HOFFMAN."
"H. J. CONNER."

The learned court below instructed the jury that the proviso at the end of the paper related to the whole agreement, and not merely to the cost of fencing; and therefore that, if the jury found that no damage was done to the plaintiff's buildings, race, or water-power, they could find that the general damage done by taking the land was payable in stock; otherwise, "the damage would be in dollars and cents, to be paid in cash." We cannot so read this paper. We can only judge of its meaning by the plain reading of its words. In the photographic

copy of the paper, as in the printed copy, the word "cost" in the final sentence, is the beginning of a new and independent sentence, dissociated from the one preceding, and it reads: "Cost of fencing not included in damages, provided no damage is done my buildings, race, or water-power." The clear meaning of these words is that the cost of fencing shall not be included in the damages, if no damage is done to the buildings, race, or water-power; that is, if no damage is done to the buildings, race, or water-power, no damage is to be allowed for the cost of fencing. This is the natural construction and meaning of the words. But the court below held that the cost of fencing was to be "payable in money value," and that the words, "provided no damage is done my buildings, race, or water-power," did not relate to the cost of fencing, but did relate to the damages mentioned in the preceding sentence. That sentence is in these words: "The damages to be assessed when the road is located, and the amount of said damages to be paid in stock in said railroad." What damages? Manifestly, "the damages," all the damages, resulting from the location and construction of the railroad through the plaintiff's land. This appears by the preceding sentence, "That I will release to the company which undertakes to construct such road, the right of way of lawful width through my land in Orange township, Columbia county, Pa." Immediately following is the provision for assessing the damages, in the sentence above quoted. Certainly the words "the damages" in that sentence mean all the damages. There is no distinction between damages arising from the taking of the land and those which arise from injury to the buildings, race, or water-power. But the plaintiff was willing to waive any claim to damages for cost of building fences, if no damage was done to his buildings, race, or water-power, and says so in the final sentence. We are quite unable to read the paper in any other way than this, and hence find that the court was in error in the reading adopted in the charge.

But the appellee contends, now, that the appellant is not at liberty to raise this question, because one of the counsel for the appellant on the trial admitted that if the water-power was damaged, the defendant was liable to a money assessment in this suit. Of course, if a litigant party to a suit asks the trial

Opinion of the Court.

court to take a certain view of a contested question, and the court does so at his request, he cannot be heard to assign such action of the court as error. This was what was done in the cases cited by the appellee upon this subject. In Benson v. Maxwell, 105 Pa. 274, we held that where a party requests the court to instruct the jury in a particular way, and the court charges substantially as requested, he cannot afterwards assign such instruction as error. And in Ritter v. Sieger, 105 Pa. 400, we held that a party litigant cannot complain if the court below submits his case to the jury from the point of view from which he himself presented it to the court, even if such point of view be erroneous. In both these cases the action of the court below was taken at the express instance of the complaining party, and we decided that he could not be heard to assign such action for error. But we find nothing of that kind on this record. There was no request by the defendant to the court to charge that the proviso of the license was limited to the cost of fencing, or that the agreement to take stock in payment for damages done by the location and construction of the railroad, was inapplicable if damage was done to the buildings, race, or water-power of the defendant. All that is alleged in support of the appellee's argument, on this subject, is a verbal statement by one of the counsel for the appellant, made on the trial, to the effect that if the water-power was injured, the damage was to be a money assessment. Upon looking at the record of the bill of exceptions, we find that the written agreement signed by the defendant had been offered in evidence, and one objection to it overruled, when some additional testimony was taken to connect the plaintiff with it, and his knowledge of its acceptance by the defendant. Thereupon, one of the counsel for the plaintiff requested defendant's counsel to state the object of the offer, to which one of the counsel replied by saying : " The object is to show, first, that the railroad company entered by consent of the defendant (plaintiff ?) upon his premises to construct its line of road ; secondly, that there was an agreement between the parties for the assessment, voluntary assessment, of any damages that might be occasioned to his property, and for the payment in capital stock of the company. We do not question that if the water-power is damaged, the defendant under that agreement is liable to a money assess-

ment in this suit. We do not deny that if the water-power is injured, the damage is to be a money assessment in this suit."

By the court: "Merely remarking that we think the offer is proper, we overrule the objection, and admit this release or paper without any further comment at this time, and give the plaintiff a bill."

It is manifest that the paper was admitted in evidence without any reference to the question of its construction, and also that the defendant's counsel could not have meant to surrender the whole question of the manner in which the damages were to be paid, because a part of the offer, as he stated it, was to show that the damages were to be paid in stock of the company. What he said in addition to that was that they did not deny that if the water-power was injured the damage was to be a money assessment. As we understand this, the counsel meant that, if the water-power was damaged, *that* damage was to be payable in money. But that is a very different thing from admitting that the whole of the damage arising out of the location and construction of the road was to be payable in money. We do not agree with the defendant's counsel in his understanding of the proviso clause of the agreement, but that would not help him if he had given up the whole question. We do not understand him to have done so, and therefore hold that he is at liberty to maintain the second assignment of error; and we sustain the assignment, because we think the learned court below was in error in its interpretation of the paper in question. But, while we sustain this assignment, it is on the bare question of the interpretation of the instrument only. We do not assume to decide whether there are facts in the case which disable the defendant from taking advantage of the provision for payment in stock. That subject is not before us under any assignment, and, without intimating whether there are any such facts, we simply say that subject is not considered.

We sustain the tenth assignment, because we do not think the agreement prohibited the defendant from interfering with the water-power and race, but only provided that the cost of fencing should not be included in the damages, if no damage was done to the buildings, race, or water-power. But, of course, we do not mean to say that damage to buildings, race, or water-power is not to be considered by the jury. Under the general

law, all the disadvantages arising from the location and construction of the road are to be taken into account in estimating the value of the whole property before the road was built and after it was finished.

What was said by the court in reference to the possible damage to buildings by fire, from the ordinary operation of the railroad without negligence, was in accord with the decisions of this court upon that subject, and we therefore do not sustain the first, seventh, eighth and ninth assignments. The fact that specific evidence was not given in relation to damage from fire does not exclude that subject from consideration, when it was shown conclusively, that, in point of fact, there were several buildings on the premises, and their respective proximity to the road was given in evidence. Of course, the subject could only be considered in the general way of estimating the value of the whole property before and after the building of the road, and not at all as an object of specific allowance. And this is the way it was presented by the court in the charge and answers.

We do not think there is any merit in the third assignment. The counsel merely presented to the jury an illustration of a physical fact which spoke for itself. The jury simply saw the natural and self-evident fact, that a column of water higher than another column, but of the same dimensions otherwise, would discharge itself with more force than the lower column. It cannot be doubted that the counsel had a perfect right to contend in argument that such would be the case, and we can see no good reason why he could not show the jury the actual natural occurrence in support of his argument. It was an illustration merely, and not an experiment.

We are inclined to sustain the fourth, fifth and sixth assignments, for the reason that while the court stated, in the main correctly, the proper functions of the jury, after a view of the premises, we think somewhat more license was allowed to the jury in the direction of substituting their own opinion for that of the witnesses, than is consistent with our recent decisions. This is rather more manifest in parts of the charge which are not assigned for error than in those that are, but the same idea is followed up and practically repeated in the latter portions. For instance, the court said to the jury: "But it is the duty of

Opinion of the Court.

the court to say to you that such opinions are subject to the qualification that the opinions of witnesses are not binding upon you, but are persuasive merely; if you are of a different opinion, you may find according to your own opinion." Then, immediately following is the language contained in the fifth assignment, and the inference which the jury may have drawn, or which it was possible for them to draw from this part of the charge, is that they might substitute their own opinion for that of the witnesses, if they saw fit to do so. The vice of the charge is in contrasting the opinion of the jury with that of the whole body of the witnesses in a collective sense, and that would be error. Probably the court did not mean to be so understood, but the language warrants such a conclusion. Of course, in one sense it is true that the jury is not bound by the opinions of witnesses on such questions; that is, of some witnesses, as where extravagant and unreasonable estimates are given. But there are in all cases the estimates of other witnesses of a very different kind; and among these, and especially where there has been a view, it is not only the right, but the duty of the jury to discriminate, and to form the best judgment they can as to the real amount of the damages. This will doubtless involve the rejection of some or much of the testimony, and that is within the right of the jury; but yet some of the language of the charge seems to authorize the substitution by the jury of their own opinion for that of the witnesses regarded in a mass. In one of the most recent cases, Flower v. Railroad Co., 132 Pa. 524, the court below charged: "You are only permitted to view the land, that you may better understand the testimony. The value of the land you are to ascertain from the witnesses." Referring to this, we said: "We see no error in this. The jurors were sworn to render a true verdict according to the evidence. It was never intended that the view of the jury should be substituted for the evidence, and that they should make up their verdict from the view in disregard thereof. The object of the view is, as was correctly said by the learned judge, to enable them the better to understand the testimony; to weigh conflicting testimony; and, thus aided, to arrive at a sound and just conclusion." We are of opinion that the charge of the learned court below, in the present case, is obnoxious to this ruling in the three assignments

of error we are now considering, and therefore they are sustained.

The eleventh assignment is sustained for reasons already stated. The twelfth assignment is not sustained. The matters discussed by the appellant under this assignment are proper for the jury, but they do not involve any matters of law with which we can interfere.

Judgment reversed, and new venire awarded.