378 A.2d 865

**COMMONWEALTH of Pennsylvania**

v.

**Ronald ROMPILLA, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 13, 1976.

Decided Oct. 6, 1977.

Victor F. Cavacini, Allentown, for appellant.

Richard J. Orloski, Allentown, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

WATKINS, President Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Lehigh County, Criminal Division, after Defendant's conviction of simple assault, rape, burglary, and theft; and from the denial of post-trial motions. He was sentenced to a term of 10 to 30 years.

On the night in question, the Appellant and two acquaintances were patrons at a taproom owned by the victim. At about 12:15 a. m., the victim left the bar area and retired to

her apartment above the barroom. The victim's employee, Jean Ervin, testified the Defendant and her friends left the premises shortly thereafter. According to the employee, however, the Defendant returned and drank more beer. At about 1:50 a. m., she observed the Defendant walk toward the rear door of the bar. She also testified she heard a slam which would be consistent with a violent opening and closing of the rear door. After the last customers left, she went to the rear door, found it ajar, and re-locked it. Apparently the door was equipped with a bolt lock which could be opened from the inside for exit but which re-locked when closed. After completing her normal clean-up chores, the employee inspected the premises and observed no one remaining, whereupon she left.

The victim, Josephine Michuna, testified that she retired to her apartment at about 12:30 and fell asleep. Later, she awakened and saw a man, whom she identified as the Defendant, walking toward her. She then described the taking of money and the rape. On cross-examination she admitted that she had lost her glasses early in the confrontation and was without their assistance for the duration of the incident. After the attack, the assailant ordered the victim to call a cab and a cab picked him up at approximately 5:00 a. m. On cross-examination of the victim about the call for the cab, the following dialogue took place:

"Q. Now whoever answered, what company did they say they were? Did they say they were Quick Service or some other company?

A. It was a woman. I think she said Quick Service.

Q. And this was about 5:00 a. m.?

A. Going on 5:00, somewhere in that time."

After the investigating detective testified, the Commonwealth rested.

In his case in chief, the Defendant offered to show, through the business records of the Quick Service Company, that no service call was made to the scene in question between the hours of midnight and 6:00 a. m. A representative of the cab company testified as to the records of the

company. A dispatcher dockets all calls which are compared to the drivers' logs to insure that all fares are reported. The Defendant offered to qualify the records under the Uniform Business Records of Evidence Act, 1939, May 4, P.L. 42, 28 P.S. 91a–91d. The offer was refused and the Defendant assigns this as his first point of error.

The appropriate section of the Uniform Business Records of Evidence Act provides:

"A record of an act, condition, or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition, or event, and if, in the opinion of the Court, the sources of information, method and time of preparation were such to justify its admission."

It is well recognized that not all business records are admissible under the foregoing statute, which by its own language permits admission in the discretion of the Court. *Poltorak v. Sandy,* 236 Pa.Super. 355, 345 A.2d 201 (1975). The records in the instant case were not prepared by the witness but rather were compiled by another dispatcher. The original log sheets kept by the drivers had been destroyed. Furthermore, when the Court examined samples of the offered records, they were inconsistent, incomplete, and confusing. Furthermore, the records were offered to challenge an admittedly indefinite statement of the victim elicited in cross-examination. We feel that in light of the state of the record at the Defendant's offer, the Court properly excluded the business records. *Haas v. Kasnot,* 371 Pa. 580, 92 A.2d 171 (1952); *Broadbent v. A. Moe & Co.,* 208 Pa.Super. 28, 220 A.2d 340 (1966).

Next, the Defendant contends that the trial Court erred in allowing the Commonwealth to test the vision of the victim in Court after she testified that she had lost her glasses early in her struggle with the Defendant. She testified that she needed her glasses only for reading and close work, that the lights were turned on as the Defendant searched each

room of the apartment, and that the lighting in the dining room was not dim. In order to buttress the identification after the attack upon her eyesight, the Commonwealth asked her to remove her glasses and tell the jury whether she could make out his facial features at various distances from her. The Defendant contends that this was error since it was not shown that the lighting conditions in the courtroom were the same as those of the premises where the incidents took place.

The grant of permission to conduct a test or experiment is within the discretion of the trial Judge. *Commonwealth v. Stallone,* 281 Pa. 41, 126 A. 56 (1924); *Commonwealth v. Brown,* 467 Pa. 388, 357 A.2d 147 (1976); McCormick on Evidence, ¶ 202, 215 (2nd Edition 1972). The questions as to the difference in the lighting situation in the courtroom and the premises goes to the weight of the evidence and is for the jury under proper instructions. The Court did not abuse its discretion in permitting the demonstration.

Next, the Defendant contends that the trial Court erred in instructing the jury that it is permissible to infer that the testimony of an absent witness available only to the Defendant would be unfavorable to the Defendant. We disagree. The Defendant testified that he spent the hours during the attack in a diner with a "couple of friends he knew by sight". He asserted he knew one DeFrain by name but did not subpoena him because, he, DeFrain, had a criminal record. Once the Defendant elected to testify to the existence of a material witness, he may not then avoid the proper instruction as to permissible adverse inferences. *Commonwealth v. Wright,* 444 Pa. 536, 282 A.2d 323 (1971); *Commonwealth v. Johnson,* 457 Pa. 554, 327 A.2d 632 (1974).

Finally, we agree with the trial Court that it was proper to allow the Commonwealth to introduce evidence of the Defendant's prior convictions. The convictions admitted were burglary, 1968; larceny, 1968; burglary, 1973; and criminal trespass, 1973. Introduction of these convictions is

consistent with the considerations recommended in *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973).

Judgment of sentence affirmed.

HOFFMAN, J., concurs in the result.