421 A.2d 374

**COMMONWEALTH of Pennsylvania**

v.

**James CLARK, Appellant.**

Superior Court of Pennsylvania.

Submitted March 23, 1979.

Filed July 25, 1980.

Petition for Allowance of Appeal Granted Feb. 23, 1981.

4

John W. Packel, Chief, Appeals, Assistant Public Defender, Leonard Sosnov, Assistant Defender, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before PRICE, SPAETH and LIPEZ, JJ.

PRICE, Judge:

On February 24, 1978, a jury found appellant guilty of rape[1] and aggravated assault.[2] Post–trial motions were denied, and appellant received a sentence of four to fifteen years imprisonment for the rape conviction and a suspended sentence for the aggravated assault conviction. He brings this appeal alleging errors by the trial judge in conducting the voir dire, admitting evidence, instructing the jury, and overruling his objection to the prosecutor's closing argument. We find these contentions lack merit, and therefore, we affirm the judgment of sentence.

1.   18 Pa.C.S. § 3121.

2.   18 Pa.C.S. § 2702.

Briefly stated, the testimony at trial revealed the following facts. At approximately 2:00 a. m. on the morning of May 22, 1977, the victim was walking home from a local bar when she was approached from behind by a man who grabbed her, punched her almost knocking her unconscious, and forced her to walk to a nearby vacant garage. Although it was dark and the victim could not see, she felt a sharp instrument pressed to her throat. The man forced her to have intercourse with him and then left the garage. As he was standing outside the garage in the illumination from nearby street lights, he turned to face the victim, who was also leaving the garage, and told her he was sorry, at which point she saw his face for the first time. She recognized him from having seen him once or twice in a nearby bar. After the attack, the victim walked to a nearby gas station from which she summoned the police and gave them a description of her assailant.

On June 26, 1977, while the victim was outside the bar in which she had previously seen her attacker, she spotted appellant and began shouting that he was the one who had raped her. The police arrived at the scene, and Officer William Sammons placed appellant under arrest. Upon searching him, the officer recovered an eight inch folding pocket–type knife.

■ Appellant's first complaint concerns the admission of testimony of Officer Sammons regarding his discovery of the knife in appellant's pocket and the display of the knife to the jury during the Commonwealth's closing argument. He objects that this evidence was irrelevant and prejudicial because the circumstances were insufficient to justify an inference that the knife taken from him at the time of arrest was the same weapon that had been used in the commission of the crime. We disagree.

■ It is well established in Pennsylvania that all that is demanded before a weapon may be introduced into evidence is a sufficient foundation revealing circumstances justifying an inference of the likelihood that the weapon was used in

the course of the crime charged. *Commonwealth v. Ford,* 451 Pa. 81, 301 A.2d 856 (1973); *Commonwealth v. Mangus,* 229 Pa.Super. 29, 323 A.2d 398 (1974). The Commonwealth is not required to establish before introduction that the particular instrument was the weapon actually used in the attack. *Commonwealth v. Brown,* 467 Pa. 512, 359 A.2d 393 (1976). Appellant argues that the likelihood of the use of the knife, and hence its relevance, was not established because it was seized five weeks after the crime occurred and the victim was unable to testify that the instrument used to force her submission had been a knife.

In testing the relevance of evidence, the courts of this Commonwealth have cited with approval the following definition: "Relevant evidence then, is evidence that in some degree advances the inquiry, and thus has probative value, and is prima facie admissible." *Commonwealth v. Shoatz,* 469 Pa. 545, 564, 366 A.2d 1216, 1225 (1976); *Commonwealth v. Walzack,* 468 Pa. 210, 218, 360 A.2d 914, 918 (1976) (both quoting C. McCormick, Evidence § 185 at 437–38 (2d ed. 1972)). The accused's possession of an implement or weapon giving him the means to carry out the crime constitutes some evidence of the probability that he committed the crime and is a relevant part of the Commonwealth's case. *Commonwealth v. Bederka,* 459 Pa. 653, 331 A.2d 181 (1975); *Commonwealth v. Yount,* 455 Pa. 303, 314 A.2d 242 (1974) (citing with approval, 1 Wharton's Criminal Evidence § 157 at 289–90 (13th ed. C. Torcia 1972)). As the interval of time between the possession of the instrument of crime and the criminal event lengthens, the probative value of the evidence may become more tenuous, but that consideration is one for the jury to resolve in evaluating the weight of the evidence; the competency of the evidence is not affected. *Commonwealth v. Tallon,* 478 Pa. 468, 387 A.2d 77 (1978); *Commonwealth v. Shoatz, supra.* The lack of positive identification that the knife was the actual weapon used likewise affects the weight of the evidence and not its admissibility. *Commonwealth v. Ford, supra.* A pocketknife is of such a size and character that one may carry it as a matter of

course. This strengthens the likelihood that appellant would have been carrying the knife at the time of the crime five weeks earlier and supports its relevance.

■ Of course, the prejudicial impact of the evidence may outweigh its probative value, and the court may be moved to exclude the evidence on this basis. *Commonwealth v. Hickman*, 453 Pa. 427, 309 A.2d 564 (1973); *Commonwealth v. Quarles*, 230 Pa.Super. 231, 326 A.2d 640 (1974). In determining whether evidence is so remote that the prejudicial effect outweighs the probative value, the court has no fixed standard on which to rely, but must instead consider the nature of the crime, the evidence being offered, and all attendant circumstances. *Commonwealth v. Kinnard*, 230 Pa.Super. 134, 326 A.2d 541 (1974). The trial judge's determination that evidence is not too remote to be admissible is within his sound discretion and will not be overturned absent an abuse. *Id.*

Possession of a pocketknife is not such an unusual or damning circumstance that the jury is likely to be inflamed and prejudiced by its proof. It is apparent that many people carry such knives and that appellant's possession, of itself, was not any direct evidence of his guilt. Furthermore, testimony concerning the knife was not emphasized during the course of the four day trial and the knife itself was not even formally introduced into evidence.[3] We decline to find that the possible prejudice so outweighed the probative value of this evidence that its exclusion was mandated. No abuse of the trial judge's discretion is indicated on this record.

■ Appellant's second assignment of error concerns the admission, for impeachment purposes, of his prior conviction for burglary. He claims that the trial judge refused to consider all the factors enunciated in *Commonwealth v.*

**3.** Although appellant claims that the prejudicial impact of Officer Sammons' testimony was enhanced by the prosecutor's exhibition of the knife during his closing argument, it is entirely likely that this display may have convinced the jury that anyone might have such a knife in their possession.

*Bighum*, 452 Pa. 554, 307 A.2d 255 (1973), and, thus, employed an improper standard in admitting this testimony. This contention is refuted by the record.

■ Admitting testimony of a prior conviction for the purpose of impeachment is a matter within the sound discretion of the trial judge. *Commonwealth v. Cobb*, 258 Pa.Super. 91, 392 A.2d 698 (1978); *Commonwealth v. Flores*, 247 Pa.Super. 140, 371 A.2d 1366 (1977). Our supreme court set forth guidelines for the exercise of that discretion in *Commonwealth v. Bighum, supra*, and recently clarified them in *Commonwealth v. Roots*, 482 Pa. 33, 393 A.2d 364 (1978).[4] In *Bighum*, the court stated the considerations as follows:

"the age and nature of the prior crimes; the length of the criminal record; the age and circumstances of the defendant; the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction." *Commonwealth v. Bighum, supra*, 452 Pa. at 567, 307 A.2d at 263.

In *Roots*, the court explained that these factors are to be used in an attempt to strike a balance between the competing interests of the Commonwealth in showing the defendant–witness' veracity, and of the defendant in avoiding prejudice that may result from jurors assuming that testimony of prior convictions demonstrates predisposition to commit the crime charged. Moreover, the court explicitly stated that the list was not exhaustive or exclusive, but merely illustrative of considerations that should influence the decision.

The instant record reflects that the trial judge was aware of the factors set forth in *Bighum*. He had a copy of the

4. The cases identify a threshold determination that must be made as to the type of conviction sought to be used. Only convictions for crimes involving dishonesty or false statement are proper impeachment tools. Burglary is clearly a crime connoting dishonesty. *Commonwealth v. Kahley*, 467 Pa. 272, 356 A.2d 745 (1976); *Commonwealth v. Bryant*, 247 Pa.Super. 386, 372 A.2d 880 (1977). Thus, the threshold has been passed, and we move to a consideration of the *Bighum* factors.

*Bighum* decision before him at the hearing and, indeed, read portions of it to counsel, including part of the paragraph in which the above–cited factors appeared. (N.T. 2.154–55). Counsel also pointed out the factors and argued them before the court. The record does indicate that the judge considered as central the issue whether appellant had other means to defend himself besides his own testimony, but the importance laid on this issue was not misplaced since *Bighum* states that this consideration is of "critical importance." 452 Pa. at 567, 307 A.2d at 263. *See also Commonwealth v. Cobb, supra*; *Commonwealth v. Flores, supra.*

Contrary to appellant's assertions, the trial judge correctly evaluated the facts of this case to find that this latter consideration weighed in favor of permitting the testimony. Appellant had several other witnesses by which to defend himself. The testimony of Malcomb Ruffin was introduced to dispute the identification testimony of the victim. He testified that he knew appellant and had seen him leaving the area earlier, but he later saw another man that he did not recognize running from the scene of the crime. Ethel Clark testified for appellant and also threw doubt upon the victim's identification. She testified that on the date of the crime, appellant had a mustache and the beginnings of a beard, contrary to the victim's description of her assailant as clean–shaven. Appellant also introduced the testimony of Monique Wooden that she had been seated on a stoop on Uber Street early that morning, and had seen no unusual activity at the garage. She further stated that it took her about twenty minutes to drive home from the area and that appellant, her mother's common–law husband, arrived home about ten to fifteen minutes later. Thus, she gave some evidence of an alibi since her testimony indicates that the rape occurred after she left the area, but that had appellant been involved, he would not have been able to make it home within the time she testified he arrived. Although appellant contends that if he had been able to testify to the events the evidence would have been stronger, this is not the standard by which we are to judge. The concern is that he not be

entirely deprived of a defense, and in the instant circumstances, appellant was not denied this.

Furthermore, the conviction was crucial to the Commonwealth's case as a means of attacking appellant's credibility. Appellant claims that his signed statement made at the time of his arrest, which had already been introduced, was an available and more effective method of impeachment. Due to the exculpatory nature of this statement, we disagree. The prior conviction, although it was over eight years old, was not so old as to bear no reflection on appellant's veracity. *Commonwealth v. Quartman*, 253 Pa.Super. 460, 385 A.2d 429 (1978) (7 year–old guilty plea allowed in for impeachment); *Commonwealth v. Rompilla*, 250 Pa.Super. 139, 378 A.2d 865 (1977) (6 year–old conviction admitted).

■ Appellant next objects to remarks made by the prosecutor during closing argument, claiming that they so inflamed and diverted the jury from proper considerations that a new trial is merited. The remarks appellant finds offensive consist of the following:

> "We talked about rights of Americans and this lady came to you and said–'I have been violated.' This is a lady who has a right to live in peace. You have a right to go across the street to the gas station and buy cigarettes–[objection–overruled]
>
> You have a right to go to a neighborhood bar and get yourself a six pack, and a lady forty years old has a right not to be a captive of darkness and have to stay in her house. We are talking about rights of an American." (N.T. 4.84–85).

We find the cumulative effect of the statements was not so prejudicial that appellant was denied a fair trial, and hence, a new trial is not warranted. *Commonwealth v. Gilman*, 470 Pa. 179, 368 A.2d 253 (1977); *Commonwealth v. Goosby*, 450 Pa. 609, 301 A.2d 673 (1973).

■ The prosecutor has an obligation during closing argument to present facts in a manner that will lead the jury to a dispassionate and objective evaluation and will produce a

judgment warranted by the evidence. *Commonwealth v. Mayberry*, 479 Pa. 23, 387 A.2d 815 (1978). The jury should not be diverted from this duty by the injection of issues broader than the guilt or innocence of the accused. *Commonwealth v. Harvell*, 458 Pa. 406, 327 A.2d 27 (1974); ABA Standards Relating to the Prosecution Function § 5.8(c) and (d) (Approved Draft, 1971). We are mindful of other cases, bearing some similarity to the present case, in which the remarks were found prejudicial. In *Commonwealth v. Harvell, supra*, the supreme court found that statements such as "[m]en are afraid to walk the streets themselves," "[p]eople don't want to go out at night," and "it might be you next time," deprived the defendant of a fair trial. Likewise, in *Commonwealth v. Cherry*, 474 Pa. 295, 378 A.2d 800 (1977), a plea to "tell the people of Philadelphia . . . that you are not going to put up with shootings on the street like the wild west" was held objectionable as an impassioning appeal to the jury's emotions. *See also Commonwealth v. Lark*, 460 Pa. 399, 333 A.2d 786 (1975). Unlike the present case, however, the remarks in those cases were part of a much longer harangue by the prosecutor which blatantly appealed to the passions of the jury and attempted to make an example of the defendant or invoke improper sympathy for the victim. The statements to which appellant objects were of very limited duration and were not part of an apparent attempt to focus the jury's attention on issues not before them or to invite them to render an unreasoned verdict.

Although in *Commonwealth v. Reynolds*, 254 Pa.Super. 454, 386 A.2d 37 (1978), this court pointed out the undesirability of engaging in evaluations of the comparative rights of the defendant and the victim, the prosecutor's argument in that case attempted to elevate the rights of the victim above the due process rights of "robbers" and "rapists," as the accused was characterized throughout the argument, *offsetting* the rights of the latter. We, of course, emphasized that a criminal defendant's rights remain constant and are defined in the constitutions of the United States and Pennsylvania. The present remarks merely point out that

the victim had rights too and made no attempt to denigrate those of appellant or cast aspersions on him. Viewing the atmosphere at trial, as we should to determine the effect upon the jury of the prosecutor's remarks, *Commonwealth v. Mikesell*, 475 Pa. 589, 381 A.2d 430 (1977), we find that any error in these statements was harmless.

■ Appellant next complains that the trial judge erred in failing to charge the jury in accord with *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954), to receive the victim's identification testimony with caution, especially since he included an instruction that if the identification testimony was positive and unqualified it may be treated as a statement of fact. We reject this contention.

The transcript of the charge indicates that the judge clearly instructed the jury that they should accept the testimony with caution and approach it carefully. (N.T. at 4.100–101). Although not in the exact language of *Commonwealth v. Kloiber, supra*, the instruction was correct and adequate. We disagree with appellant's argument that this case is similar to *Commonwealth v. Pitts*, 450 Pa. 359, 301 A.2d 646 (1973), because it is the "flip side" of *Pitts*, and that we should employ its reasoning to find error in the instant case. In *Pitts*, the defendant complained because only the cautionary part of the *Kloiber* charge had been given, and the jury had not been instructed as to the conditions for accepting the testimony as a statement of fact. The supreme court found this was an error because the jury was told the weight to accord the testimony, a question that is properly left for their decision. In contrast to *Pitts*, the instant charge instructed the jury of the different weights they could accord the testimony and properly left this matter within their discretion.

■ Appellant's fifth, and final, assignment of error is that the trial judge, who conducted the entire voir dire, improperly limited the scope of examination by failing to ask prospective jurors several questions submitted by his counsel. Specifically, the submitted questions were as follows:

"2.   Mr. Clark is charged with rape and aggravated and simple assault.  Would you be able to give a fairer trial to someone charged with something other than rape and assault?

a.   Is there anything in the nature of these charges which would make it difficult for you to act fairly?

3.   If the alleged rape victim testified is it possible that appearance would so upset you or influence you, that you could not give Mr. Clark a fair trial?"[5]

The scope of our review of the voir dire questioning is limited since the extent of the examination is within the sound discretion of the trial judge, and we will not reverse absent palpable error.  *Commonwealth v. Sparrow,* 471 Pa. 490, 370 A.2d 712 (1977); *Commonwealth v. Kahley,* 467 Pa. 272, 356 A.2d 745 (1976).   The scope of voir dire should be limited to questions attempting to disclose lack of qualification and whether the juror has formed a fixed opinion as to the accused's guilt or innocence.  *Commonwealth v. England,* 474 Pa. 1, 375 A.2d 1292 (1977); *Commonwealth v. Legree,* 256 Pa.Super. 128, 389 A.2d 634 (1978). It is not designed to provide a basis for peremptory challenge, and thus, "generally speaking, the ordinary prejudices of veniremen are beyond the pale of exploration on voir dire." *Commonwealth v. Legree, supra,* 256 Pa.Super. at 133, 389 A.2d at 634 (recognized exception for racial prejudice).   We are conscious that it would be unrealistic to expect jurors to be free from all prejudices, and therefore, we require only that jurors be conscious of their sworn responsibility and attempt to reach a decision solely on the facts presented.  *Commonwealth v. England, supra*; *Commonwealth v. Johnson,* 452 Pa. 130, 305 A.2d 5 (1973).

5.   Appellant also complains that the judge did not inquire, as per his request, about any physical problems the jurors might have that would interfere with their functioning as a juror.  Both the court and defense counsel were able to observe the jurors' ability to sit and listen during the voir dire and no challenges were raised on this basis.  Furthermore, during the rest of the trial the record gives no indication that any such problems were observed.  We find that appellant suffered no prejudice from the lack of this questioning.

We note, initially, that defense counsel's purpose in requesting that these questions be asked was improper since he stated that they were designed to aid in exercising the peremptory challenge. (N.T. at 1.56). The question concerning the amount of influence the victim's testimony might have upon the juror was obviously designed to determine the juror's reaction to certain evidence in advance of its presentation, which is clearly irrelevant to the purposes of voir dire. *See Commonwealth v. VanHorn*, 188 Pa. 143, 41 A. 469 (1898). Moreover, the court adequately explored possible biases and prejudices of the prospective jurors through its other questions and specifically asked if they had any personal reasons that might interfere with giving appellant fair treatment. We find no error in the refusal of the submitted questions.

In accord with the foregoing reasoning, the judgment of sentence is affirmed.

SPAETH, J., filed a dissenting opinion.

SPAETH, Judge, dissenting:

I believe that reversible error was committed in this case when the trial judge, over appellant's counsel's objection and without any cautionary instruction, permitted the prosecutor to wave appellant's knife in front of the jury during closing argument, despite the fact that the knife had never been admitted into evidence.

Officer William Sammons testified that when he arrested appellant, five weeks after the rape, he found a "silver handled knife, with [a] blade approximately three and a half inches long," in appellant's right rear pocket. N.T. 1.166. The blade was a folding blade, and the overall length of the knife when open was eight inches. N.T. 1.167. While the officer was testifying, the prosecutor showed him the knife and had it marked for identification as Commonwealth's Exhibit No. 2. Later, the complaining witness testified that a sharp object was placed at her neck during the attack, but darkness prevented her from observing what it was. N.T. 2.85–2.86. She also testified that a sharp object felt like a

knife, N.T. 2.86, but when appellant's counsel objected that a sharp object was not necessarily a knife, the trial judge struck from the record her remark about the object against her neck having felt like a knife. N.T. 2.86. After the complaining witness's testimony was completed, the prosecutor moved for the admission of the knife into evidence. After a sidebar conference, N.T. 2.134, appellant's counsel renewed his objection to the admission of the knife and made a motion for a mistrial, N.T. 2.135. The trial judge denied the motion for a mistrial, and when counsel then requested the judge to give a cautionary instruction to the effect that the knife had no relevance to the case, the judge refused the request, N.T. 2.135–2.136. At this point, however, the prosecutor did not renew his motion for the admission of the knife, but instead only introduced one unrelated exhibit, N.T. 2.137;[1] nor did the prosecutor at any later point move for the admission of the knife, and it was never admitted into evidence.

Before closing arguments commenced, appellant's counsel in colloquy pointed out that

> none of the exhibits [including the knife] were admitted into evidence. I don't think the exhibits should be used any more as far as closing arguments and as far as being shown to the jury or anything else because they are not admitted into evidence.

N.T. 4.15.

When the trial judge asked the prosecutor, "[W]hy did you not offer everything into evidence?" the prosecutor replied, "Well, the reason I just didn't move everything into evidence was that I thought it was just not necessary. There was no reason." N.T. 4.17. When appellant's counsel then went on to object specifically to the prosecutor "holding up the knife" during closing argument, N.T. 4.19, the prosecutor replied, "I can hold up a knife if I have marked the knife

---

1. The unrelated exhibit was Exhibit No. 6. Although the prosecutor said that he would "move that in," the trial judge did not acknowledge the motion, and so far as appears, the exhibit was in fact not admitted into evidence.

16

for identification," *id.*, and the trial judge stated, "I think he may do it, and you may do it too," *id.*, to which appellant's counsel responded, "Note my objection, please," *id.*

Consistent with this colloquy, during closing argument the prosecutor did indeed display the knife to the jury. The following then occurred at sidebar:

> MR. SOSNOV [appellant's counsel]: I am objecting to—I am objecting to his waiving *[sic]* it in front of the jury—the knife—and I would object—
>
> THE COURT: Okay, okay.
>
> MR. SOSNOV: I will ask—
>
> THE COURT: I will overrule the objection.
>
> N.T. 4.71.

The foregoing discloses the most flagrant violation—or ignorance—of what I should have supposed to be *the* fundamental principle of our law, namely, that an accused is to be tried *only* on the basis of testimony and exhibits properly admitted into evidence. McCormick on Evidence, § 51 (2nd ed. 1972); 1 Wigmore, Evidence § 21 (Chadbourn rev. 1972). If an exhibit has been admitted into evidence, of course the prosecutor may refer to it in his closing argument, and, so long as he does so in a proper manner, may exhibit it to the jury, *see, e. g., Commonwealth v. Mika*, 317 Pa. 487, 177 A. 3 (1935); but until the majority's decision today, I have never read a case, and I do not believe there is one, upholding the opinion of the prosecutor, and the trial judge, that "I can hold up a knife if I have marked the knife for identification." [2]

2.  Sometimes it is claimed that the prosecutor argued on the basis of an exhibit not admitted into evidence, but the record does not support the claim. *See, e. g., Commonwealth v. Hadok*, 313 Pa. 110, 169 A. 111 (1933). Also, counsel "[may] employ toys, miniatures, duplicates, and apparatus to illustrate and illuminate their arguments, even though such articles may not have been introduced into evidence during the trial." Laub, Pennsylvania Trial Guide § 154 (1959); *Hoffman v. Railroad Co.*, 143 Pa. 503, 22 A. 823 (1891). The use of toy automobiles in an accident case is a common illustration of this practice.

The egregiousness of the error here may be illustrated by contrasting this case with *Commonwealth v. Gardner*, 246 Pa.Super. 582, 371 A.2d 986 (1977), where we considered whether reversible error had occurred when a handgun allegedly used in a robbery was displayed to a witness, but not subsequently admitted into evidence. Judge PRICE, writing for the majority, held that the prosecutor had not acted unprofessionally because the record showed that at the time he displayed the handgun, "he was making a good faith offer of the evidence with a reasonable chance of success." 246 Pa.Super. at 593, 371 A.2d at 991. Furthermore, Judge PRICE went on to say, the display of the gun was only minimally prejudicial because it was exhibited only once in the course of a two day trial; the prosecutor "did not flaunt the gun before the jury or comment on it in his closing argument," *id.*; four witnesses linked appellant with the gun; and the trial judge cautioned the jury that it was only to consider the one exhibit admitted into evidence, and was not to consider the exhibits not admitted into evidence. 246 Pa.Super. at 592–594, 371 A.2d at 991–992.

Here, it cannot be said that the prosecutor's display of the knife to the jury was incident to a "good faith offer of the evidence with a reasonable chance of success." The display was during closing argument, nor was it marked by any good faith; it rather occurred because of the prosecutor's entirely unwarranted opinion that he had the right to display and argue on the basis of an exhibit that he knew he had not offered into evidence. Furthermore, here the display was not minimally prejudicial. In *Gardner*, four witnesses had linked the defendant with the item displayed. There was no comparable linking here. The knife was found in appellant's possession five weeks after the rape occurred; the complaining witness was not able to testify positively that *any* knife was used in the attack; and the trial judge had stricken from the record her testimony that the object placed at her neck during the attack felt like a knife.

In *Gardner,* given the prosecutor's good faith offer of the handgun, and the minimal prejudice, we found no prosecutorial misconduct. No such finding is possible here. Section 5.8 of the American Bar Association Standards Relating to The Prosecution Function and The Defense Function (Approved Draft 1971) states:

5.8 Argument to the jury.

(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

(b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

The prosecutor's display of the knife contravened both section 5.8(a) and (c). The prosecutor did not "argue . . . from evidence in the record"; he argued from evidence that he knew was not in the record. Further, given that the complaining witness's testimony regarding a knife had been stricken from the record, by displaying the knife to the jury the prosecutor both misstated the evidence and misled the jury. Still further, the display of the knife could only have been designed to appeal to the jury's prejudices. As Wigmore has pointed out, the display of weapons used in a crime is often objected to because

there is a natural tendency to infer from the mere production of any material object, and without further evidence,

the truth of all that is predicated of it. Secondly, the sight of deadly weapons or of cruel injuries tends to overwhelm reason and to associate the accused with the atrocity without sufficient evidence.

4 Wigmore, Evidence § 1157 (Chadbourn rev. 1972). *Accord State v. Mayfield*, Mo., 506 S.W.2d 363 (1974). Wigmore points out that these dangers can be lessened by the proper authentication of the evidence and careful instructions by the court. No such protective measures were taken here. Indeed, the absence of any such protective measures is perhaps the most striking feature of this case as compared to *Gardner*. In *Gardner*, the trial judge cautioned the jury:

"[T]here will go with you to the jury room one exhibit, which is the only exhibit I admitted into evidence .... The other exhibits were not admitted into ... and are not for your consideration in your deliberations in this case."

246 Pa.Super. at 594, 371 A.2d at 992.

As Judge PRICE, observed:

[P]rejudice resulting from erroneously admitted evidence may be rectified by cautionary instructions. *Commonwealth v. Stolzfus*, 462 Pa. 43, 337 A.2d 873 (1975); *Commonwealth v. Murray*, 437 Pa. 326, 263 A.2d 886 (1970). The same should be true where the evidence is never admitted.

Here, the trial judge not only refused to give any precautionary instruction regarding the knife, when appellant's counsel requested such an instruction during the complaining witness's testimony, but, in colloquy before closing argument, he expressly *agreed* with the prosecutor, over counsel's objection, that the prosecutor could display the knife even though it had never been admitted into evidence.

The judgment of sentence should be reversed and the case remanded for new trial.